584 A.2d 1062

**Gary L. REEVES, Petitioner,**

v.

**PENNSYLVANIA GAME COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1990.

Decided Dec. 18, 1990.

668

J.J. Cooper, with him, Arthur L. Goldberg, Goldberg, Katzman & Shipman, P.C., Harrisburg, for petitioner.

William R. Pouss, Chief Counsel, Harrisburg, for respondent.

Before PELLEGRINI and BYER, JJ., and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

Gary L. Reeves (Reeves) appeals from a decision of the Pennsylvania Game Commission (Commission), which found that Reeves had forfeited his vehicle, a 1986 Jeep Cherokee, when he pled guilty to assisting in the killing of a deer by using an artificial light in violation of Section 2310(a)(2) of the Game and Wildlife Code (Code), 34 Pa.C.S. § 2310(a)(2).

Reeves is a resident of Tennessee and came to Pennsylvania for a short period of time for employment purposes. Through his employment, Reeves made the acquaintance of James Seiders (Seiders) and was invited by Seiders to accompany him and his son to spotlight deer on the evening of September 29, 1989. Reeves accepted the invitation and agreed to do the driving that night. When Reeves picked up Seiders and his son on September 29, 1989, Reeves was aware that Seiders had brought a rifle with him. Reeves checked the rifle to ensure that it was not loaded. Reeves, Seiders and Seiders' son then drove to a field where Reeves began to spotlight deer. At approximately 10:10 p.m., while Reeves was directing the beam of the spotlight on one or more deer that were standing in the field, Seiders shot at a deer illuminated by the spotlight.[1] Both Reeves and Seiders were inside the vehicle when the shooting occurred.

Prior to the shooting, two Deputy Wildlife Conservation Officers (Officers) had been observing Reeves' vehicle for twenty-five minutes and had noticed that the persons in the vehicle had been actively spotlighting the fields during this time. After the Officers heard a shot, they stopped Reeves' vehicle and questioned Reeves and Seiders about the shot they heard. Reeves admitted that he had been spotlighting deer but denied responsibility for any shooting. After further questioning and searching the vehicle unsuccessfully for the firearm, the Officers released them from the

---

1. Reeves testified that he did not see Seiders load the rifle with ammunition.

scene.[2] Approximately forty minutes later, the Officers found a wounded deer in the immediate area that had been shot by a small caliber firearm. The deer had to be destroyed.

Later that evening, Reeves was contacted by the Officers who had previously spoken with him. The Officers informed Reeves that he was being arrested and charged with unlawfully assisting in the shooting of a deer by use of an artificial light while operating his vehicle in violation of Section 2310(a)(2) of the Code,[3] and that his vehicle was being seized for evidence. The Officers further indicated that the vehicle might possibly be confiscated. Reeves was immediately taken by the Officers to the field where the deer had been shot and was again asked whether he had shot the deer. Reeves told the Officers that he had spotlighted the deer and Seiders had shot the deer while the deer was visible in the spotlight. Reeves also signed a statement indicating the same in the presence of the Officers. Reeves was then informed by the Officers that he had a right to a hearing before a District Justice or he could waive his right to a hearing and acknowledge guilt by signing a Field Acknowledgment of Guilt Receipt (Receipt). Because a District Justice was not available until the next morning, Reeves agreed to acknowledge his guilt by signing the Receipt and was released from custody. All parties agreed to meet in the morning to complete the Receipt. The next morning at the meeting, before Reeves signed the Receipt, an Officer again explained the charges against Reeves and stated that the vehicle remained seized and was subject to confiscation by the Commission but was not necessarily forfeited. Reeves then signed the Receipt in the presence of the Officer and paid a fine.

2. The Officers found Seiders' loaded rifle at the scene after sunrise. Seiders later admitted that he had thrown the rifle from the vehicle when he realized that the Officers were going to stop Reeves' vehicle.

3. Section 2310(a)(2) of the Code provides that it is unlawful for any person or group of persons to aid, assist or conspire, either in the killing or taking or in an attempt to kill, take, possess, transport or conceal, any game or wildlife or a part thereof, which has been killed or taken by use of any artificial light.

Several weeks later, Reeves called the Commission to determine the status of his vehicle. When Reeves was told that he had forfeited the vehicle by signing the Receipt, he requested an administrative hearing to review the forfeiture of his vehicle. After the hearing was conducted, the hearing officer determined that the vehicle had been forfeited because the vehicle had been used to facilitate the search for deer and to provide a platform from which a particular deer was spotted and shot.[4] Additionally, there were no mitigating circumstances to support Reeves' request to return the vehicle. The Executive Director of the Commission concurred with the decision of the hearing officer. Reeves then appealed the Commission's decision to this court.

The issue now before us is whether Reeves was denied procedural due process when the Commission determined that he had forfeited his vehicle on the basis that he had pled guilty to violating Section 2310(a)(2) without providing him notice and a hearing regarding the forfeiture of his vehicle. Additionally, we must consider whether the forfeiture provision of the Code requiring the automatic forfeiture of the vehicle is unconstitutional.

■■■ The Due Process Clause of the Fourteenth Amendment of the United States Constitution[5] requires at a mini-

---

4. The hearing officer cited Sections 2310(d) and 102 of the Code as authority for the forfeiture of Reeves' vehicle. Section 2310(d) provides that any craft or vehicle or attachments thereto, and all artificial lights and any firearm or paraphernalia being unlawfully used, and any game or wildlife unlawfully taken, killed or possessed, are contraband. Section 102 of the Code defines contraband as any game or wildlife or part or product thereof, or any personal property, including, but not limited to, firearms, traps, boats, decoys, vehicles and attachments and property designed for use or used in hunting and taking game or wildlife, when the game or wildlife or part or product thereof, or the personal property, is held in possession, transported or used or taken in violation of any law, the enforcement or administration of which is vested in the Commission. Contraband shall be forfeited to the Commission to be disposed of at the discretion of the Director.

5. Section 1 of the Fourteenth Amendment to the United States Constitution provides in pertinent part:

mum that the deprivation of life, liberty or property by adjudication must be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. *Upset Sale, Tax Claim Bureau of Berks County,* 505 Pa. 327, 479 A.2d 940 (1984). Due process of law is equally applicable to administrative proceedings as it is to judicial proceedings. *Department of Health v. Brownsville Golden Age Nursing Home, Inc.,* 103 Pa.Commonwealth Ct. 449, 520 A.2d 926 (1987).

Reeves first argues that he was deprived of due process because he was not provided with notice regarding the forfeiture proceeding or a meaningful hearing at which he could prove that he was entitled to the return of his vehicle. Reeves argues next that forfeiture proceedings are in rem, and, as such, the Commission was required to provide him with notice and a hearing regarding the forfeiture, separate and apart from the hearing on his alleged criminal violation of the Code. Finally, Reeves argues that Section 2310(d) of the Code, which provides for the automatic forfeiture of contraband without separate notice and a hearing, is unconstitutional because it does not provide for due process of law.

The Commission, on the other hand, contends that Reeves was not denied due process of law and Section 2310(d) of the Code is not unconstitutional because a forfeiture proceeding under the Code is in personam and hinges on the corresponding criminal proceeding. As such, separate notice and a hearing are not required for the forfeiture of contraband. The Commission argues that once a person pleads guilty to committing a violation of the Code by signing a Receipt, or at a hearing is found guilty of committing the alleged offense, any vehicle or other paraphernalia used to commit the violation is automatically forfeited as part of the penalty for conviction of the crime, and separate

No state shall make or enforce any law which shall abridge the privileges or immunities of the United States; nor shall any State deprive any person of life, liberty or *property, without due process of law;* nor deny to any person within its jurisdiction the equal protection of the law. (Emphasis added.)

notice and a hearing regarding the forfeiture are not required.

In support of its contention that a forfeiture proceeding under the Code is an action in personam, the Commission cites the case of *Commonwealth v. Beloff*, 166 Pa.Super. 286, 70 A.2d 689 (1950).[6] In that case, the court determined that a forfeiture proceeding under The Game Law [7] was an action in personam based on the express language of Section 731 of The Game Law. Section 731 of The Game Law stated:

> *Any person* violating any of the provisions of the sections of this article shall, *upon conviction, be sentenced to pay the following fines and costs* of prosecution for each offense:
>
> . . . .
>
> (n) For making use of, or taking advantage of, any vehicle, trailer, conveyance, headlight, or spot light, or artificial light or battery or other contrivance or device to spot or locate or hunt for, or catch or take or kill or wound, any elk, deer or bear ... contrary to the provisions of this article, one hundred dollars for each person concerned; *and the forfeiture* of such vehicle trailer, headlight, spotlight, or other contrivance and all paraphernalia used. (Emphasis added.)

The court in *Beloff* properly determined that the forfeiture proceeding under the then-existing Game Law was wholly in personam because the statute specified that the

6. The facts in *Beloff* are similar to those presently before this court. In *Beloff*, three men were convicted of assisting in the killing of a deer through the use of an artificial light and were ordered to forfeit the gun, artificial light and the automobile they used in killing the deer. The title holder to the car under a conditional sales agreement intervened at the appeal level to contest the validity of the forfeiture order because he did not know that the car was being used in violation of the law. The forfeiture order was affirmed, although the proceeds from the sale of the automobile which represented the owner's interest was paid to the owner. The court found that the owner of a car which was used in violation of the law was not bound by a sentence of forfeiture as to a defendant in an action in personam prosecuted without the knowledge of that owner.

7. The Game Law, Act of June 3, 1937, P.L. 1225, *as amended,* formerly 34 P.S. § 1311.731, repealed by Act of July 8, 1986, P.L. 442.

proceeding was against the wrongdoer and the forfeiture of the property did, in fact, hinge on the property owner's conviction for violating the Game Law.[8]  The forfeiture was only intended to be an additional penalty to be imposed on the convicted defendant in the action.  However, the Game Law of 1937 which the court in *Beloff* relied upon, has since been repealed and has been replaced by the present Game Code which no longer contains language providing for the automatic forfeiture of property as part of the sentence for the property owner's conviction for violating the Code.

■ Although Section 2310(a)(2) of the Code provides that it is unlawful for any person to aid, assist or conspire to kill or attempt to kill any game by use of any artificial light, and Section 2310(d) provides that a vehicle unlawfully used to kill game is contraband and is forfeited to the Commission, nowhere does the Code provide that the forfeiture is part of the sentence for the person who is convicted for violating Section 2310(a)(2) of the Code.  Because the

**8.**  At common law, there were two forms of forfeiture proceedings.  As explained in detail by the court in *Commonwealth v. Landy*, 240 Pa.Super. 458, 467, 362 A.2d 999, 1003–1004 (1976):

The first involved the forfeiture of a felon's real and personal property.  This proceeding was *in personam* in nature and the forfeiture did not attach until the offender was convicted: "The necessary result was, that in every [forfeiture] case where the Crown sought to recover such goods and chattels, it was indispensable to establish its right by producing the record of the judgment of conviction." *The Palmyra*, 25 U.S. (12 Wheat.) 1, 6 L.Ed. 531 (1827). The second forfeiture proceeding based on common law deodands involved the forfeiture of an object causing the death of any creature: "Where a man killeth another with the sword of John of Stile, the sword shall be forfeit as deodand, and yet no default is in the owner." O. Holmes, The Common Law 25 (1881).  This concept probably originated in the Mosaic Code: " '[i]f an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten.' And, among the Athenians, whatever was the cause of a man's death, by falling upon him, was exterminated or cast out of the dominions of the republic." *J.W. Goldsmith, Jr.—Grant Company v. United States*, 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921).  This forfeiture proceeding was *in rem* in nature with the property itself considered the offender: "It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it was conscious instead of inanimate and insentient." *Various Items of Personal Property v. United States*, 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558 (1931).

present day Game Code does not provide language which would characterize a forfeiture proceeding as in personam, and because a forfeiture of Reeves' vehicle may not be appropriate as an additional penalty to Reeves, we find that forfeiture proceedings under the Code are in rem proceedings and must comport with due process of law.

In order for in rem forfeiture proceedings to satisfy due process, the proceedings must provide the person whose property has been seized and deemed forfeited with adequate notice and a meaningful hearing. Adequate notice requires that the property owner be informed that the Commission has instituted a forfeiture proceeding against his property, he has a right to defend against that action and the burden which he must meet at the forfeiture hearing in order to retrieve his property. A meaningful hearing requires that the property owner be given the opportunity to provide a defense for the illegal use of his property by himself or some other person when violating the Code.

Examples of modern in rem forfeiture proceedings which provide such information are those found under the 6801 of the Judicial Code, 42 Pa.C.S. § 6801, Section 5 of the Act of July 3, 1941, P.L. 263, 35 P.S. § 831.5, and Section 602 of the Liquor Code, 47 P.S. § 6–602.[9] These forfeiture pro-

9. Section 602 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 6–602, which provides an example of a forfeiture proceeding which gives a property owner adequate information regarding notice and a hearing, sets forth the following:

(a) The proceedings for the forfeiture of all contraband shall be in rem, in which the Commonwealth shall be the plaintiff and the contraband the defendant. A petition shall be filed in the court of common pleas, verified by oath or affirmation of any officer or citizen, containing the following: (1) a description of the property so seized; (2) a statement of the time and place where seized; (3) the owner, if known; (4) the person or persons in possession, if known; (5) an allegation that the same had been possessed or used or was intended for use in violation of the Code; and (6) a prayer for an order of forfeiture that the same be adjudged forfeited to the Commonwealth, unless cause be shown to the contrary.

(b) A copy of said petition shall be served personally or by certified mail on said owner if he can be found within the jurisdiction of the court, or upon the person or persons in possession at the time of the

ceedings comply with due process and provide the property owner whose property has been seized with notice and a hearing even though the statutes provide for the automatic forfeiture of contraband utilized in illegal acts involving

seizure thereof. Said copy shall have endorsed thereon a notice as follows:

"To the Claimant of Within Described Property: You are required to file an answer to this petition, setting forth your title in and right to possession of said property, within fifteen (15) days from the service hereof; and you are also notified that if you fail to file said answer, a decree of forfeiture and condemnation will be entered against said property."

Said notice shall be signed by petitioner or his attorney, or the district attorney or the Attorney General.

(c) If the owner of said property is unknown or outside the jurisdiction of the court and there was no person in possession of said property when seized, or such person so in possession cannot be found within the jurisdiction of the court, notice of said petition shall be given by an advertisement in only one newspaper of general circulation published in the county where such property shall have been seized, once a week for two (2) consecutive weeks. No other advertisement of any sort shall be necessary, any other law to the contrary notwithstanding. Said notice shall contain a statement of the seizure of said property, with a description thereof, the place and date of seizure, and shall direct any claimants thereof to file a claim therefor on or before a date given in said notice, which date shall not be less than ten (10) days from the date of the last publication.

(d) Upon the filing of any claim for said property setting forth a right of possession thereof, the case shall be deemed at issue and a time be fixed for the hearing thereof.

(e) At the time of said hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed.

In the event such claimant shall prove by competent evidence to the satisfaction of the court that said liquor, alcohol or malt or brewed beverage, or still, equipment, material, utensil, vehicle, boat, vessel, container, animal or aircraft was lawfully acquired, possessed and used, then the court may order the same returned or delivered to the claimant; but if it appears that said liquor, alcohol or malt or brewed beverage or still, equipment, material or utensil was unlawfully possessed or used, the court shall order the same destroyed, delivered to a hospital, or turned over to the board or enforcement bureau, as hereinafter provided, or if it appears that said vehicle, boat, vessel, container, animal or aircraft was unlawfully possessed or used, the court may, in its discretion, adjudge same forfeited and condemned as hereinafter provided.

controlled substances, narcotics, drugs or liquor.[10] While a criminal violation of an Act or Code may actually occur, a person must still be provided with notice and a hearing because property used when violating the Act or Code may not be subject to forfeiture, and forfeiture may not be appropriate as an additional penalty to be imposed on the wrongdoer. Whether a forfeiture is proper can only be determined at a hearing with prior notice. Consequently, we must determine whether the Commission provided Reeves with adequate notice and a hearing regarding the forfeiture of his vehicle.

■ Reeves argues, and we agree, that the Commission did not provide him with either adequate notice or a meaningful hearing regarding the forfeiture of his vehicle. Because the Commission believed that forfeiture proceedings under the Code were in personam, the Commission admittedly did not provide Reeves with notice of the initiation of a forfeiture proceeding and Reeves' right to an evidentiary hearing on the forfeiture separate from the criminal hearing, or the standards which Reeves was required to meet at the hearing in order to retrieve his vehicle. This was evidenced by the fact that the Commission did not contact Reeves once it had deemed the vehicle forfeited, but instead, did nothing until Reeves contacted the Commission to determine the status of his vehicle and to request a hearing in an attempt to retrieve his vehicle.

Although the Code provides for the forfeiture of a vehicle illegally used when violating the Code, the Code does not provide information regarding the requisite notice and hearing once the vehicle has been seized and deemed forfeited. Consequently, because the Code in its present state does not provide an in rem forfeiture provision, and the Commission has not issued any guidelines supplementing the Code to provide the necessary information to the property owner whose property has been seized and deemed forfeited, both

---

10. Forfeiture proceedings for the illegal possession or use of gambling devices are also in rem proceedings pursuant to Section 5513 of the Crimes Code, 18 Pa.C.S. § 5513.

the Code and the Commission have failed to comply with due process.

We note that even though the Commission failed to provide Reeves with a forfeiture hearing, a discretionary mitigation hearing was held at Reeves' request. However, while a mitigation hearing may be conducted simultaneously with a forfeiture hearing, the mitigation hearing does not act as a substitute nor militate against the need for notice or a hearing concerning the in rem forfeiture. If the Commission decides to allow mitigation after it decides that the property is forfeited, that hearing must also satisfy the notice and hearing requirements of due process.

In this case, a forfeiture hearing was never conducted and the mitigation hearing which was held did not comply with due process. The Commission never apprised Reeves that he had the option to request a mitigation hearing, the burden which he had to meet in order to prove a mitigating circumstance existed, what constituted a mitigating circumstance, or the basis for the hearing officer's decision to find such a circumstance existed. The hearing officer's decision apparently was based solely on whether he believed that the vehicle should be returned for humanitarian purposes because Reeves was not provided with standards which had to be met. Because the requisite notice and hearing information regarding the mitigation hearing was never provided to Reeves, the mitigation hearing which was held was meaningless, and, as such, failed to provide Reeves with procedural due process.[11]

▆▆▆▆ Although there is a strong presumption of constitutionality of all lawfully enacted legislation, a statute or a provision of a statute will be found unconstitutional when the statute in question clearly violates the Constitution.[12] *Commonwealth v. Santiago,* 376 Pa.Super. 54, 545 A.2d

11. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

12. A court may declare an Act of Assembly void, in whole or in part, when it clearly violates the Constitution. *City of Pittsburgh v. The Pennsylvania Railroad,* 394 Pa. 58, 145 A.2d 700 (1958).

316 (1988).[13]    In this case, the forfeiture provision of the Code fails to provide for notice and a hearing as required for an in rem forfeiture proceeding and, therefore, violates the due process clause of the United States Constitution. Until such time that the forfeiture provision of the Code is amended to provide for in rem forfeiture proceedings which comport with due process, automatic forfeitures under the existing provision are unconstitutional.[14]

13.  *See also State of South Dakota v. Miller,* 248 N.W.2d 377 (S.D.1976); *State of Washington v. One 1972 Mercury Capri,* 85 Wash.2d 620, 537 P.2d 763 (1975); *People of the State of Michigan v. Campbell,* 39 Mich.App. 433, 198 N.W.2d 7 (1972); and *Fell v. Armour,* 355 F.Supp. 1319 (1972), which all held that in rem forfeiture provisions which lacked notice and a hearing were unconstitutional for failure to provide due process.

14.  At oral argument, the Commission acknowledged that the Code was deficient in certain areas and that it was waiting for this court to decide the present case before the Commission issued regulations to correct the deficiencies.  While we agree that the Commission's procedures are deficient, those procedures unfortunately cannot be cured by regulation.

Article 2, § 1 of the Pennsylvania Constitution provides that the legislative power of the Commonwealth is vested in a General Assembly consisting of a Senate and a House of Representatives.  Although this article prohibits delegation of the legislative function, the legislature may confer authority and discretion upon another body in connection with the execution of a law.  However, such a grant of authority must contain adequate standards to guide and restrain the exercise of the delegated administrative function.  *Commonwealth of Pennsylvania v. Parker White Metal Co.,* 512 Pa. 74, 515 A.2d 1358 (1986).  Further, although the legislature may delegate the power to determine some fact or state of things upon which the law makes or intends to make its own action depend, it cannot empower a fact-finding body such as the Commission to create the conditions which constitute the fact.  *In Re Marshall,* 363 Pa. 326, 69 A.2d 619 (1949).  Basic policy choices must be made by the General Assembly.  *Blackwell v. State Ethics Commission,* 523 Pa. 347, 567 A.2d 630 (1989).  In this case, the Legislature never provided for an in rem forfeiture provision.  Because the basic policy choices regarding such a provision were never made by the Legislature, including those standards which a property owner must meet at a forfeiture hearing, standards and guidelines cannot now be provided to the Commission in order for the Commission to make regulations in this area.  To allow the Commission to make law in this area would give the Commission the power to create the conditions which constitute the facts to be proven. This would usurp the Legislature's authority.  Therefore, the Legislature cannot delegate its rule-making power to the Commission to make changes to the present Code to provide for due process in in rem forfeiture proceedings.

Consequently, because the Commission did not provide Reeves with procedural due process regarding the forfeiture of his vehicle, and the Code in its present state fails to provide for in rem forfeiture proceedings as required by due process, we find that the forfeiture of Reeves' vehicle was unconstitutional. Accordingly, the decision of the Commission finding that Reeves had forfeited his vehicle to the Commission is reversed and the vehicle is to be returned to Reeves at his place of residence.

## ORDER

AND NOW, this 18th day of December, 1990, the decision of the Pennsylvania Game Commission, by letter dated January 2, 1990, finding that Reeves had forfeited his vehicle, is reversed. The vehicle is to be returned to Reeves at his place of residence in accordance with this opinion.