Pleas of Allegheny County is **AF-FIRMED**.

**COMMONWEALTH of Pennsylvania**

v.

**2010 BUICK ENCLAVE VIN # GALRBED8J122029, $36,900.00 in U.S. Currency, One (1) Springfield 9mm Pistol, Serial # 972758, a Magazine and Ammunition.**

**Appeal of: Andys O. Rodriguez.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 1, 2014.

Decided Sept. 10, 2014.

Everett Cook, Whitehall, for appellant.

Heather F. Gallagher, Senior Deputy District Attorney, and Kevin P. McCloskey, Deputy District Attorney, Allentown, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Andys O. Rodriguez (Rodriguez) appeals from an order of the Court of Common Pleas of Lehigh County (trial court), dated May 31, 2013, ordering the forfeiture of a 2010 Buick Enclave VIN# GALRBED8J122029, $36,900.00 in U.S. Currency, one Springfield 9mm Pistol, Serial # 972758, and a magazine and ammunition related to the pistol. For the reasons set forth, we reverse the trial court and remand for further proceedings.

As part of a criminal investigation into a fraudulent income tax scheme in Allentown, police conducted surveillance on America Araujo Santos, the owner of Rodriguez Check Cashing located in the 500 block of North 7th Street in Allentown, Pennsylvania. (Reproduced Record (R.R.) 9.) Santos was observed going to a residence at 1028 West Tilghman Street on several occasions, which was the home of Rodriguez, his wife, and their son, similarly named Andy Rodriguez (Andy). (R.R. 10.) Detective Pedro Cruz, of the Allentown Police Department's Criminal Investigation Unit, discovered that the Internal Revenue Service (IRS) had an ongoing investigation involving 1028 West Tilghman Street, which began after Andy reported a laptop stolen. (R.R. 11–12.) The police contacted the IRS after recovering the laptop and discovering stolen identities and tax returns saved on one of the computer's drives. (R.R. 12, 20.) Andy denied that the laptop was his, but requested permission to take it nonetheless, which the police denied. (R.R. 12–13.)

In conjunction with the IRS investigation, it was discovered that the tax returns contained on the computer drive, along with many others, were filed electronically with the IRS from several internet protocol, or IP, addresses associated with 1028 West Tilghman Street. (R.R. 12–13; Ex. C–1 at 4–17.) Those IP addresses were tied to almost six million dollars in fraudulent tax returns for the years 2010–2012. (R.R. 15.) Based upon this information, law enforcement officers obtained and executed a federal search warrant at 1028 West Tilghman Street. (R.R. 13–14; see Ex. C–1 (search warrant and affidavit).) During the search, multiple items were seized by both the IRS and Commonwealth. (R.R. 15–16.) Among the property seized by the Commonwealth were the following items owned by Rodriguez: a 2010 Buick Enclave, VIN# GALRBED8J122029; $36,900.00 in U.S. Currency; one Springfield 9mm pistol, serial # 972758; and a magazine and ammunition for the pistol. (R.R. 16.) The cash was discovered in a hole in the wall behind the refrigerator. (R.R. 16.) Rodriguez denied there were any large sums of cash in the house until police found the $36,900 behind the refrigerator, at which time he claimed ownership of the cash and explained that it was from his money lending business and disability payments. (R.R. 16–17.)

The Commonwealth filed a motion for forfeiture and condemnation, seeking the common law forfeiture of derivative contraband, and a hearing on the motion was held February 28, 2013 and May 31, 2013. At the hearing Detective Cruz testified about the investigation (R.R. 3–23), and the trial court admitted the affidavit and search warrant into evidence as Exhibit C–1 without objection (R.R. 14). Rodriguez testified that the money came from his ongoing loan business. (R.R. 48.) He testified that he is unemployed, but he runs a personal loan business out of his house and charges between one and five percent simple interest. (R.R. 26, 44–46.) He testified that he funds this business using cash advances from his credit cards, his disability payments, and an insurance payment. (R.R. 27–28.) He introduced a variety of documents into evidence, including loan statements, disability payment statements, credit card statements, and records from his personal loan business. (*See* Exs. D–1 through D–6.) Additionally, Rodriguez testified about his tax returns for the years 2009–2012, which show reported disability payments of only $14,310 for each year, with no income. (R.R. 68.) The 2010 return also shows a 401 K distribution of $20,595, and 2012's shows an additional taxable interest of $14,870. (R.R. 68.) His expenses include rent, electric, cable, car insurance, cell phone, and interest on his children's college loans. (R.R. 71–72.) He also testified that he purchased the Buick for $30,000, of which he paid $15,000 in cash up front (R.R. 71), and paid $569 for the pistol (R.R. 75). Rodriguez testified that his wife works and helps with expenses, such as the children's clothes and health insurance, but he did not testify to or introduce evidence concerning how much she contributed. (R.R. 75.) He also testified that he and his wife were "practically separated," and living in separate residences from 2005–2013. (R.R. 72, 77.)

Following the hearing, the trial court issued an order granting the Commonwealth's forfeiture motion. On appeal, Rodriguez raises two issues: first, whether the Commonwealth failed to establish the requisite nexus between the property seized and criminal activity. Specifically, Rodriguez argues that there can be no nexus because he was neither charged with nor convicted of a crime. The second issue on appeal is whether the trial court failed to weigh properly the evidence he introduced about the source of the money.

■ The grant or denial of a forfeiture petition rests within the sound discretion of the trial court. *Commonwealth v. One 2001 Toyota Camry*, 894 A.2d 207, 209 n. 1 (Pa.Cmwlth.) (en banc), *appeal denied sub nom. Commonwealth v. One 2001 Toyota Camry (Sanders)*, 588 Pa. 766, 903 A.2d 1234 (2006). In an appeal from a forfeiture proceeding, this Court's review is limited to determining whether the findings of fact are supported by substantial evidence, and whether the trial court committed an error of law or abused its discretion. *Commonwealth v. $6,425.00 Seized from Esquilin*, 583 Pa. 544, 880 A.2d 523, 529 (2005).

■ This case presents an opportunity for the Court to clarify an important distinction between the oft-encountered statutory civil forfeiture and its less common cousin, "common law" forfeiture of derivative contraband.[1] Statutory civil

---

1. There are two types of property subject to forfeiture: contraband *per se* and derivative contraband. *One 2001 Toyota Camry*, 894 A.2d at 210. Contraband *per se* is property that is inherently illegal, the mere possession of which subjects its owner to criminal sanctions. *Id.* The most common examples of contraband *per se* are illegal drugs, such as heroin or cocaine. *See, e.g., Commonwealth v. Assorted Consumer Fireworks*, 16 A.3d 554,

forfeiture, as the name suggests, arises by acts of legislatures, state or federal, which ascribe certain criminal character to property, not persons, and provide for their forfeiture to the government. Examples of statutory forfeiture laws in the Commonwealth include the Controlled Substances Forfeiture Act, 42 Pa.C.S. §§ 6801–6802 (Drug Forfeiture Act); Section 7.1 of what is commonly referred to as the Fireworks Law,[2] 35 P.S. § 1278; and Section 601 of the Liquor Code,[3] 47 P.S. § 6–601.

Historically, in addition to statutory forfeitures, the common law recognized two other forms of forfeiture proceedings:

> Forfeiture proceedings have historical roots dating back thousands of years. At common law, there were two forms of forfeiture proceedings. The first involved the forfeiture of a felon's real and personal property. This proceeding was In personam in nature and the forfeiture did not attach until the offender was convicted: 'The necessary result was, that in every (forfeiture) case where the Crown sought to recover such goods and chattels, it was indispensable to establish its right by producing the record of the judgment of conviction.' *The Palmyra*, 25 U.S. (12 Wheat.) 1, 14, 6 L.Ed. 531 (1827).

> The second forfeiture proceeding, based on common law deodands, involved the forfeiture of an object causing the death of any creature: "Where a man killeth another with the sword of John of Stile, the sword shall be forfeit as deodand, and yet no default is in the owner." O. Holmes, The Common Law 25 (1881). This concept probably originated in the Mosaic Code: " '(i)f an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten.' And, among the Athenians, whatever was the cause of a man's death, by falling upon hi m, was exterminated or cast out of the dominions of the republic." *J.W. Goldsmith, Jr.–Grant Company v. United States*, 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921). This forfeiture proceeding was In rem in nature with the property itself considered the offender: 'It is the property to a legal fiction, held guilty and condemned to a legal fiction, held guilty and condemned as though it was conscious

---

558 (Pa.Cmwlth.) (per curiam), *appeal denied*, 611 Pa. 671, 27 A.3d 225 (2011). Derivative contraband, on the other hand, is property which in and of itself is legal, but "nonetheless constitutes the fruit of a criminal enterprise or is used to perpetuate an unlawful act." *One 2001 Toyota Camry*, 894 A.2d at 210.

**2.** Act of May 15, 1939, P.L. 134, *as amended*, 35 P.S. §§ 1271–1278. Section 7.1, added to the Fireworks Law in 2004, provides:

The Pennsylvania State Police, any sheriff or police officer shall take, remove or cause to be removed at the expense of the owner all stocks of consumer fireworks or display fireworks or combustibles offered or exposed for sale, stored or held in violation of this act. The owner shall also be responsible for the storage and, if deemed necessary, the destruction of these fireworks.

**3.** Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101 to 10–1001. Section 601 provides:

No property rights shall exist in any liquor, alcohol or malt or brewed beverage illegally manufactured or possessed, or in any still, equipment, material, utensil, vehicle, boat, vessel, animals or aircraft used in the illegal manufacture or illegal transportation of liquor, alcohol or malt or brewed beverages, and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may be instituted in the manner hereinafter provided. No such property when in the custody of the law shall be seized or taken therefrom on any writ of replevin or like process.

instead of inanimate and insentient.' *Various Items of Personal Property v. United States,* 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558 (1931).

*Commonwealth v. Landy,* 240 Pa.Super. 458, 362 A.2d 999, 1003–04 (1976) (footnote omitted); *see Reeves v. Pa. Game Comm'n,* 136 Pa.Cmwlth. 667, 584 A.2d 1062, 1065 n. 8 (1990).

Deodand was never embraced in American common law. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 682, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). This left the forfeiture of the property of a criminal as the only remaining form of nonstatutory civil forfeiture recognized in the common law of our country. The Pennsylvania Superior Court introduced this form of common law forfeiture to the Commonwealth through a series of reported three-judge panel decisions in the early 1980s—*Commonwealth v. Coghe,* 294 Pa.Super. 207, 439 A.2d 823 (1982); *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Estate of Peetros v. County Detectives,* 341 Pa.Super. 558, 492 A.2d 6 (1985). The foundation on which those decisions are based, however, has since been criticized by another three-judge panel of the Superior Court and by this Court.

In *Commonwealth v. Crosby,* 390 Pa.Super. 140, 568 A.2d 233 (1990), the Honorable James E. Rowley, writing for the majority, opined that before the court's precedent in the early 1980s, forfeiture in the Commonwealth was exclusively statutory. He noted the precedent in *Coghe, Maglisco,* and *Peetros* as recognizing common law authority for the forfeiture of derivative contraband, with a critical observation about those opinions: "Significantly, ... the authorities cited in these opinions to support this proposition were cases in which there had been *statutory* authority for the forfeiture." *Crosby,* 568

A.2d at 237 (emphasis in original). Nonetheless, the majority in *Crosby* felt compelled to follow the early 1980s precedent:

> While this brief review of the highlights of the law of forfeiture of derivative contraband suggests that there may be no convincing authority to support the conclusions in *Coghe, Maglisco,* and *Peetros* that there can be "common law" forfeiture of derivative contraband in the absence of express statutory authority, we, as a three-judge panel of this Court, are bound to follow these three precedents regardless of the soundness of their logical underpinnings, and particularly in the absence of any instruction from the Supreme Court on this issue.
>
> *Coghe, Maglisco,* and *Peetros* are materially indistinguishable from the present case.

*Id.* at 238 (footnote omitted).

In *Commonwealth v. Cox,* 161 Pa. Cmwlth. 589, 637 A.2d 757 (1994), Richard Cox (Cox), convicted of, *inter alia,* robbery and conspiracy to commit robbery, filed a petition to return his vehicle, which he had used as the getaway car for his crimes. After conducting several hearings, the trial court denied his petition and granted an oral motion by the Commonwealth for forfeiture of the vehicle. Cox appealed. On appeal to this Court, the Commonwealth argued that forfeiture of the vehicle was appropriate as a matter of common law, as recognized by the Superior Court in *Crosby.* Cox countered that there was no such thing in the Commonwealth as common law forfeiture.

A three-judge panel of this Court, after noting that in almost all forfeiture cases in the Commonwealth there is statutory authority for the forfeiture, was "dubious" of the Commonwealth's reliance on *Crosby* and common law forfeiture. *Cox,* 637 A.2d at 759. The Court, however, chose not to address the question. Instead, we held

that even assuming, *arguendo*, a claim for common law forfeiture exists in Pennsylvania, the Commonwealth was required to seek forfeiture by formal petition. Because its oral motion during a hearing on Cox's petition for return of property was inadequate, the Court reversed and remanded to the trial court with a directive that it grant Cox's petition. *Id.* at 760.

Unlike Cox, Rodriguez does not challenge the existence of common law forfeiture in the Commonwealth. Accordingly, that issue is not before us. Rodriguez does, however, contend that the common law forfeiture of his property was improper because he was never charged with, let alone convicted of, a crime. This is where an important distinction between statutory forfeiture and common law forfeiture (assuming, *arguendo*, it exists) arises.

The courts of this Commonwealth have long recognized that the execution of statutory forfeiture is not dependent on a conviction. *See, e.g., Esquilin,* 880 A.2d at 530 (Pa.2005); *Commonwealth v. 542 Ontario St.,* 989 A.2d 411, 417 (Pa.Cmwlth. 2010) (en banc), *appeal denied,* 609 Pa. 703, 16 A.3d 503 (2011). This recognition is not only consistent with the statutory forfeiture schemes themselves, but also the history of statutory and common law forfeiture in this country. In *The Palmyra,* 25 U.S. (12 Wheat.) 1, 6 L.Ed. 531 (1827), the United States government sought to forfeit a sailing brig, the Palmyra, on account of its use as a vehicle of piracy against various vessels of the United States and other countries. The seizure of the vessel and ultimate forfeiture through court of admiralty was authorized by an Act of Congress. In other words, the proceeding was in the nature of a statutory forfeiture—a proceeding *in rem.* Certain claimants opposed forfeiture, arguing, *inter alia,* that there had been no conviction of the alleged offender for piracy *in per-*

*sonam* and, as a consequence, *in rem* forfeiture of the vessel was improper.

The United States Supreme Court rejected this argument, and in doing so elaborated on a critical and historical distinction, applicable in this appeal, between civil forfeitures based on statute and those based on common law:

> The other point of objection is of a far more important and difficult nature. It is well known, that at the common law, in many cases of felonies, the party forfeited his goods and chattels to the crown. The forfeiture did not, strictly speaking, attach *in rem;* but it was a part, or at least a consequence, of the judgment of conviction. It is plain from this statement, that no right to the goods and chattels of the felon could be acquired by the crown by the mere commission of the offence; but the right attached only by the conviction of the offender. *The necessary result was, that in every case where the crown sought to recover such goods and chattels, it was indispensable to establish its right by producing the record of the judgment of conviction.* In the contemplation of the common law, the offender's right was not devested [sic] until the conviction. *But this doctrine never was applied to seizures and forfeitures, created by statute, in rem, cognizable on the revenue side of the Exchequer.* The thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing; and this, whether the offense be *malum prohibitum,* or *malum in se.* The same principle applies to proceedings *in rem,* on seizures in the Admiralty. Many cases exist, where the forfeiture for acts done attaches solely *in rem,* and there is no accompanying penalty *in personam.* Many cases exist, where there is both a forfeiture *in rem* and a personal penalty.

But in neither class of cases has it ever been decided that the prosecutions were dependent upon each other. But the practice has been, and so this Court understand[s] the law to be, that the proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam*. This doctrine is deduced from a fair interpretation of the legislative intention apparent upon its enactments. Both in England and America, the jurisdiction over proceedings *in rem*, is usually vested in different Courts from those exercising criminal jurisdiction. If the argument at the bar were well founded, there could never be a judgment of condemnation pronounced against any vessel coming within the prohibitions of the acts on which the present libel is founded; for there is no act of Congress which provides for the personal punishment of offenders, who commit 'any piratical aggression, search, restraint, depredation or seizure,' within the meaning of those acts. Such a construction of the enactments, which goes wholly to defeat their operation, and violates their plain import, is utterly inadmissible. *In the judgment of this Court, no personal conviction of the offender is necessary to enforce a forfeiture in rem in cases of this nature.*

*The Palmyra*, 25 U.S. (12 Wheat.) at 14–15 (emphasis added). Since *The Palmyra*, the United States Supreme Court has continued to recognize this important distinction between statutory *in rem* forfeiture and common law *in personam* forfeiture, the latter of which "could not be instituted unless a criminal conviction had already been obtained." *United States v. Ursery*, 518 U.S. 267, 275, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

The courts of the Commonwealth that have touched on the question have been consistent in recognizing that a conviction is required for common law forfeiture, but not statutory forfeiture. *See, e.g., Commonwealth v. One 1988 Ford Coupe*, 393 Pa.Super. 320, 574 A.2d 631, 633 n. 2 (1990) ("At common law, forfeiture could not attach unless there was a conviction, and evidence of that conviction was necessary to prove a forfeiture claim."), *appeals denied*, 527 Pa. 631, 592 A.2d 1299 & 1301 (1991); *Commonwealth v. Real Prop. & Improvements at 2338 N. Beechwood St.*, 65 A.3d 1055, 1063 n. 16 (Pa.Cmwlth.2013) (en banc) (*Beechwood Street*). In response to Rodriguez's contention that common law forfeiture cannot arise absent a conviction, the Commonwealth directs us to the Pennsylvania Supreme Court's decision in *Esquilin* and this Court's decision in *Assorted Consumer Fireworks*. But *Esquilin* involved a forfeiture under the Drug Forfeiture Act. Similarly, *Assorted Consumer Fireworks* involved forfeiture under the Fireworks Law. Because both cases involved statutory forfeitures, not common law forfeitures, it is not surprising, and entirely consistent with the history and precedent on forfeiture in this country, that the courts would hold that a conviction was not necessary to move forward with the forfeitures in those cases.

The Commonwealth also directs us to the Pennsylvania Superior Court's decision in *Maglisco*. There, the person seeking to overturn the forfeiture of a pistol and several rifles was initially charged with shooting her husband, but the charges were later dropped. *Maglisco*, 491 A.2d at 1382. In allowing for the forfeiture of the pistol, which the wife used to shoot her husband, the Superior Court held that the lack of a conviction was "not fatal to the forfeiture proceeding." *Id.* at 1384. In *Peetros*, the wife of the decedent sought the return of books confiscated from her deceased husband's office by police. The Commonwealth sought forfeiture of books,

arguing that they were contraband from the decedent's loan sharking operations. The wife argued that a conviction was necessary. The Superior Court found otherwise. *Peetros,* 492 A.2d at 9 ("Conviction of the owner or possessor of the contraband for the underlying crime is not necessary, and even an acquittal does not operate as a bar to a finding of contraband.") (footnote omitted).

█ As to the issue of whether a criminal conviction is required to proceed with common law—*i.e.,* nonstatutory—forfeiture of derivative contraband, *Maglisco* and *Peetros* are unpersuasive for several reasons. First, although the panel in *Maglisco* cited the Superior Court's prior decision in *Landy* favorably to support a common law forfeiture theory, it failed to follow the portion of the *Landy* court's decision, quoted above, where, relying on *The Palmyra,* the court held that a conviction was necessary to maintain this type of common law forfeiture action. *See Landy,* 362 A.2d at 1003. Second, the opinions the Superior Court cited in *Maglisco* and *Peetros* in support—*One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (forfeiture under Tariff Act of 1930, 19 U.S.C. § 1497); *Commonwealth v. 1978 Toyota,* 321 Pa.Super. 549, 468 A.2d 1125 (1983) (forfeiture under predecessor to Drug Forfeiture Act); *United States v. One 1976 Lincoln Mark IV,* 462 F.Supp. 1383 (W.D.Pa.1979) (forfeiture under several federal statutes)—were not common law forfeiture cases. They all arose under federal or state forfeiture statutes. As noted above, it is well settled in this Commonwealth, and throughout the history of forfeiture in this country, that a conviction is not required to proceed with a statutory *in rem* forfeiture. The decisions in those cit-

ed cases, then, can only be relied upon to support the proposition that a conviction is not required to proceed with statutory forfeiture. Finally, not only are the decisions in *Maglisco* and *Peetros* on this issue contrary to *Landy,* they are contrary to the history of common law forfeiture in this country, as outlined by the United States Supreme Court in, *inter alia, The Palmyra* and *Usery,* as well as the more recent decisions of the Superior Court and this Court in *One 1988 Ford Coupe* and *Beechwood Street.*

█ Here, the Commonwealth sought seizure of the property at issue under a theory of common law forfeiture. It is undisputed, however, that there is no conviction of record tying that property to unlawful activity. Because the Commonwealth may not proceed to forfeit property under common law without evidence of a conviction, the order of the Court of Common Pleas of Lehigh County, granting the Commonwealth's motion for forfeiture and condemnation, is hereby reversed and this matter is remanded to the trial court with direction that it grant the relief that Rodriguez requested in his answer to the Commonwealth's motion, that being the return of his property.[4]

### ORDER

AND NOW, this 10th day of September, 2014, the order of the Court of Common Pleas of Lehigh County, dated May 31, 2013, is REVERSED and the matter is REMANDED to the trial court for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

---

4. Based on our disposition, we need not consider the remaining issue that Rodriguez raises on appeal relating to the weight afforded his testimony by the trial court.