J-A26027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MISCELLANEOUS PAPERS, $5443.00 U.S. CURRENCY, ET AL. | |
| Appellee | No. 242 MDA 2014 |

Appeal from the Order January 17, 2014
In the Court of Common Pleas of Snyder County
Criminal Division at No(s): CP-55-MD-0000031-2013

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 22, 2014**

The Commonwealth appeals from the January 17, 2014 order denying its petition for forfeiture of derivative contraband.  After careful review, we reverse and remand for further proceedings consistent with this memorandum.

A summary of the factual and procedural history of this case, as disclosed by a review of the certified record, follows.  On November 9 and 10, 2011, Brian Bartholomew, on behalf of Blackthorn Estate Buyers, Inc., was engaged in purchasing precious metals and jewelry out of rented rooms at the Hampton Inn in the Borough of Shamokin Dam, Snyder County, Pennsylvania.  N.T., 1/13/14, at 7-8, 16-17.  Bartholomew had secured the proper license for this activity from the Snyder County Sheriff's Department in accordance with the regulations enabling the license provision of the

Precious Metals Act.[1]  Corinne and David Sievert, who locally operated a similar business, expressed concerns to the Snyder County District Attorney's Office that Bartholomew was not complying with various requirements of the Precious Metals Act, as made enforceable through appropriate Pennsylvania Code regulations.[2]  The Seiverts agreed to act as confidential informants in performing controlled sales of items of gold jewelry.  On November 10, 2011, based on the Seiverts' representations that Bartholomew was not in compliance with portions of the Act, the Commonwealth charged him with two counts of failure to keep required records, and three counts of failure to post prices in connection with those controlled sales.[3]  Based on additional information gathered by investigators during the execution of the arrest warrant, the criminal complaint was amended to include 21 additional counts of failure to keep required records.

On March 19, 2012, Bartholomew entered a negotiated guilty plea to one count of failure to keep required records.[4]  The trial court immediately sentenced Bartholomew in accordance with the plea agreement to 12 months' probation.  At that time, certain items that had been seized by the

_____

[1] 37 Pa. Code § 501.3.

[2] 73 P.S. §§ 1931-1942; 37 Pa. Code §§ 501.1-501.11.

[3] 73 P.S. §§ 1933 and 1936; 37 Pa. Code §§501.6, 501.9, and 501.11.

[4] The certified record does not contain a copy of the guilty plea transcript, and there is no indication in the record of the facts admitted to by Bartholomew in support of the plea.

Commonwealth were returned to Bartholomew by agreement of the parties. Some papers, an amount of cash, several coins, and numerous items of jewelry were not returned.

On February 27, 2013, the Commonwealth filed a petition for forfeiture of derivative contraband, seeking forfeiture of the papers, cash, coins and jewelry that had been seized at the time of Bartholomew's arrest and retained by the Commonwealth.[5]  A hearing on the Commonwealth's petition was held on January 13, 2014.  Bartholomew did not respond to the Commonwealth's petition or participate in the hearing.  On January 17, 2014, the trial court entered an order, together with its findings of fact, conclusions of law and opinion, denying the Commonwealth's petition.  On February 6, 2014, the Commonwealth filed a timely notice of appeal.[6]

On appeal, the Commonwealth raises the following issue for our review.

> Whether the trial court erred and/or abused its discretion when it denied the Commonwealth's

---

[5] In the meantime, according to the trial court opinion, Susan Peroff-Bagon, as purported owner of Blackthorn Estate Buyers, Inc., headquartered in Florida, filed a petition for return of the seized property.  The petition is not contained in the certified record or reflected in the trial court docket.  Nevertheless, the trial court denied the petition for failure of Peroff-Bagon to appear or present any evidence at the hearing on her petition, scheduled in conjunction with the Commonwealth's petition.

[6] The Commonwealth and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.  The trial court referenced its January 17, 2014 findings of fact, conclusions of law and opinion as containing the reasons for its decision.  Trial Court Opinion, 3/12/14, at 1.

petition to forfeit the proceeds of and the items used to facilitate violations of Pennsylvania's Precious Metals Act, where 1) the Commonwealth proved a nexus between the property and the violations, and 2) the forfeiture was proportional to those violations.

Commonwealth's Brief at 8.

We are guided by the following principles in our consideration of the Commonwealth's issue. "Our standard of review in assessing the propriety of a forfeiture order is limited to whether the trial court's findings of fact are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." ***Commonwealth v. Salamone***, 897 A.2d 1209, 1215 (Pa. Super. 2006), *citing* ***Commonwealth v. Real Property & Improvements***, 832 A.2d 396, 398 (Pa. 2003), *appeal denied*, 923 A.2d 1173 (Pa. 2007). "Analysis of whether property should be forfeited to the Commonwealth is dependent upon whether the property is contraband; the burden of proving that the property is contraband rests upon the Commonwealth." ***In re Firearms, Eleven***, 922 A.2d 906, 910 (Pa. Super. 2007) (citations omitted), *appeal denied*, 932 A.2d 1289 (Pa. 2007). "[T]he Commonwealth's burden in forfeiture proceedings is a preponderance of evidence standard. Despite the lesser standard, the quasi-criminal nature of forfeiture proceedings is undisputed." ***Commonwealth v. Anthony***, 613 A.2d 581, 583 (Pa. Super. 1992) (citations omitted).

> [T]wo distinct classifications of contraband have been developed: contraband *per se,* and derivative contraband. Contraband *per se* is property the mere

> possession of which is unlawful …. Heroin and 'moonshine' whiskey are examples of contraband *per se.* Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act. An example of derivative contraband is a truck used to transport illicit goods.

***Commonwealth v. Howard***, 713 A.2d 89, 92 (Pa. 1998), *quoting*

***Commonwealth v. Fassnacht***, 369 A.2d 800, 802 (Pa. Super. 1977), *cert. denied*, 439 U.S. 911 (1979).

> Property is not derivative contraband merely because it is owned or used by someone who has been engaged in criminal conduct. Rather, the Commonwealth must establish a specific nexus between the property and the alleged criminal activity.
>
> Objects do not acquire "guilt by association" merely because they are owned by a person who has been engaged in criminal conduct. The requirement that a sufficient nexus exist between the property and the prohibited criminal activity serves to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person.

***In re Firearms, Eleven***, ***supra*** at 910 (internal quotation marks and citations omitted). "This is not to say, however, that the Commonwealth's right to seek forfeiture is contingent upon the result in a criminal prosecution. Regardless of whether a conviction can be gained from the evidence, the Commonwealth may seek to forfeit property as long as it establishes that the property constitutes contraband." ***Anthony***, ***supra*** at 583-584 (internal quotation marks, citation, and footnote omitted); ***but see***

- 5 -

*Commonwealth v. 2010 Buick Enclave*, 99 A.3d 163 (Pa. Cmwlth. 2014) (holding a criminal conviction is required to proceed with a forfeiture of derivative contraband).[7]  In addition to establishing a nexus between derivative contraband and illegal activity, the Commonwealth must show that the proposed forfeiture is proportional to the offense.  *Commonwealth v. Maglisco*, 491 A.2d 1381, 1385 (Pa. Super. 1985).  In evaluating proportionality, our Supreme "Court and the U.S. Supreme Court have… held that in the context of excessive fines challenges, forfeitures are 'fines.'" *Commonwealth v. Carela-Tolentino*, 48 A.3d 1221, 1223 n.3 (Pa. 2012), *citing* **United States v. Bajakajian**, 524 U.S. 321, 334 (1998), and *Commonwealth v. Real Property and Improvements Commonly Known As 5444 Spruce Street, Philadelphia*, 832 A.2d 396, 399 (Pa. 2003).

> *Bajakajian*[] requires that, in cases where a punitive forfeiture is involved, the court "compare the amount of the forfeiture to the gravity of the defendant's offense.  If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Bajakajian*, [*supra*] at 336–37[].
>
> The Court enumerated factors by which a court may measure the gravity of the offense, each of which is limited to the conduct of the defendant: the penalty imposed as compared to the maximum penalty available; whether the violation was isolated

---

[7] "[D]ecisions rendered by the Commonwealth Court are not binding on this Court." **Beaston v. Ebersole**, 986 A.2d 876, 881 (Pa. Super. 2009) (*en banc*) (citation omitted).

or part of a pattern of misbehavior; and, the harm resulting from the crime charged. *Id.* at 338–39[].

*5444 Spruce Street, Philadelphia*, *supra* at 402 (footnote omitted).

Instantly, it is undisputed that the property subject to the Commonwealth's forfeiture petition is not contraband *per se*. Therefore, the issue before the trial court was whether the Commonwealth proved, by a preponderance of the evidence, a sufficient nexus between the items seized and Bartholomew's illegal activity, and, if so, whether the proposed forfeiture was proportionate to that illegal activity. *See In re Firearms, Eleven*, *supra*; *5444 Spruce Street, Philadelphia*, *supra.* At the January 13, 2014 hearing on its motion, the Commonwealth offered the testimony of Detective William Neitz, Jr., an investigator for the Snyder County District Attorney's Office, and the Seiverts. Detective Neitz testified about his investigation and arrest of Bartholomew. The Seiverts testified about their respective controlled sales of jewelry to Bartholomew and their personal observation of numerous instances of his non-compliance with the Precious Metals Act.

The trial court found that Bartholomew's "offense, as proven by the Commonwealth, was a failure to follow several specific legal requirements associated with the Precious Metals Act." Trial Court Opinion, 1/17/14, at 8. Nevertheless, the trial court concluded, "[e]ven though the Commonwealth can establish a nexus through circumstantial evidence, we cannot find that the jewelry and money seized was necessarily used in or derived from the

illegal activity of Barthololmew [sic]." *Id.* "There is no evidence to point to [the items seized as] having originated from transactions at the Hampton Inn location." *Id.* Additionally, the trial court found "[t]he proposed forfeiture, particularly of the various items of jewelry, and the cash, is disproportionate to the nature of the crime involved." *Id.* at 7. We disagree.

In its analysis, the trial court focused on the instances described by the Seiverts of the infractions they observed during their respective sales on November 9 and 10, 2011. It further noted that no evidence linked the remaining items of jewelry and cash received to the infractions observed on those occasions. The trial court failed to appreciate that the lack of documentation accompanying those items was itself evidence of ongoing violations of the Act. Detective Neitz testified on direct examination as follows.

> Q    Were -- did law enforcement seize any items from the location involved with the sales by Bartholomew and Blackthorn?
>
> A    Yes. There was a large cash sum that was set -- or that was seized that night. And there was a number of items that **there was no identification on**. Part of the requirements are that the individuals fill out the slips and give a copy to the individual they've purchased it from **and also have that slip with the property that they purchase**. **We found a number of items that had no -- no information on, you know, for us to go back on and comply with the legislation**. And there was [sic] cash sales. There was a large amount of cash that was taken that night or that we actually seized.

N.T., 1/13/14, at 12 (emphasis added).

To sustain its burden, it was not necessary for the Commonwealth to link the items seized to the specific controlled sales performed by the Seiverts. It was undisputed that Bartholomew was at the Hampton Inn to engage in an advertised licensed event to purchase precious metal items. In such circumstances, the Act required Bartholomew to generate and maintain certain records.

**§ 1933. Records of transactions**

**(a) Dealers to keep record.--**Every dealer in precious metals shall keep a record of every transaction upon a form approved by the Attorney General. The record shall include as a minimum:

(1) The name, age and address of the seller which must be verified by said dealer, requiring proof of identity from the seller sufficient to insure the accuracy of the represented name and address of the seller.

(2) An accurate description of the property purchased, including any serial number or other identifying marks or symbols and the date and hour of the transaction.

**(b) Record to be maintained.--**Said record shall be maintained by the dealer in precious metals for a period of one year from the date of the transaction and shall be available for inspection by any law enforcement official of the Federal Government, the Commonwealth or any of its municipalities.

**(c) Copy of record to district attorney.--**A copy of every record of transaction shall be delivered or mailed to the district attorney of the county in which a purchase of precious metals is made by the close

of the next working day after the day on which the metal was purchased.

**(d) Copy of record to police department in lieu of district attorney.--**The district attorney may authorize such records to be delivered or mailed to the police department of the municipality in which the precious metal was purchased in lieu of delivery or mailing to the district attorney.

73 P.S. § 1933.

### § 501.6. Records of transactions.

The dealer shall completely, accurately and legibly record every transaction on a form provided by and prepared by the dealer. Forms that meet all of the requirements for information as set forth in this section are deemed approved by the Office of Attorney General. The record of every transaction shall include:

>   (1) The name, address, age, sex, race and driver's license number, if any, of the seller shall be entered.

>   (2) The identity of the seller shall be established by requiring the seller to produce an identification issued by a governmental agency with a photo of the seller thereon, if available, and at least one other corroborating means of identification. Otherwise, identification sufficient to reliably establish the person's true identity shall be required.

>   (3) The seller shall be required to sign the form on which is recorded the information required by this section.

>   (4) An accurate description of the property purchased shall include all names, initials, serial numbers or other identifying marks or monograms on each item purchased.

(5) The time and date of the transaction shall be recorded at the time of the transaction. Records of transactions shall be maintained by the dealer in precious metals for a period of 1 year and shall be available for inspection by any law enforcement official of the Federal Government, the Commonwealth or its municipalities. A copy of every record of transaction shall be delivered or mailed to the district attorney of the county in which a purchase of precious metals is made by the close of the next working day after the day on which the metal is purchased. The district attorney may authorize records to be delivered or mailed to the police department of the municipality in which the precious metal is purchased in lieu of delivery or mailing to the district attorney. Each item of precious metal purchased by a dealer in precious metals shall be retained in unaltered condition for 5 full working days after report of its purchase has been filed with the proper district attorney or his designee.

37 Pa. Code § 501.6.

We conclude it is reasonable to infer, from the absence of such records attendant to any of the jewelry items seized, that Bartholomew's recordkeeping infractions observed on November 9 and 10, 2011 were ongoing and involved the transactions pertaining to the seized items wherever and whenever they occurred. Thus, we deem the trial court's conclusion that the Commonwealth failed to establish a nexus between the items seized and Bartholomew's illegal activity to be erroneous. The Commonwealth was not required to tie the items for which it sought forfeiture to the violations observed during the specific transactions performed by the Sieverts, if it could link the evidence with illegal activity

generally. **See Anthony**, **supra**. Its evidence of a wholesale absence of required recordkeeping was sufficient to meet its initial burden of proof. Absent any rebuttal or contrary proof offered by a respondent, we conclude the trial court erred in denying the Commonwealth's forfeiture petition. **See Commonwealth v. Assorted Consumer Fireworks**, 16 A.3d 554, 558-559 (Pa. Cmwlth. 2011) (holding fireworks inventory was forfeitable where defendant was engaged in unlicensed sales of fireworks even though evidence of specific sales was lacking), *appeal denied*, 27 A.3d 225 (Pa. 2011).

Additionally, we disagree with the trial court that the proposed forfeiture is disproportionate to the subject illegal activity. Again, the trial court focuses too narrowly on the single violation to which Bartholomew pleaded guilty. The evidence points to multiple violations and a pattern of noncompliance with the Act. The statute and regulations are designed to protect the public from uninformed sales of valuable assets and to provide law enforcement with checks against the fencing of stolen property. Given these concerns and the ongoing nature of the violations, we conclude the proposed forfeiture is indeed proportionate with the illegal activity attributed to Bartholomew. **See 5444 Spruce Street, Philadelphia**, **supra**.

In light of the foregoing, we conclude the trial court abused its discretion by denying the Commonwealth's petition for forfeiture in this case. Accordingly, we reverse the trial court's January 17, 2014 order and remand for further proceedings consistent with this memorandum.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/22/2014</u>