IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 32 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court at No. 448 CD |
| | : | 2015, dated 1/13/17, reversing and |
| | : | remanding the order of the Adams |
| | : | County Court of Common Pleas at Nos. |
| v. | : | CP-01-CR-224-2014 and CP-01-MD- |
| | : | 25-2015 dated 3/9/15 |
| JUSTEN IRLAND; SMITH AND WESSON | : | |
| 9MM SEMI-AUTOMATIC PISTOL, | : | |
| SERIAL # PDW0493, | : | |
| | : | |
| Appellee | : | ARGUED:  November 29, 2017 |

**OPINION**

CHIEF JUSTICE SAYLOR                                    DECIDED:  September 21, 2018

This case concerns whether a common law basis for the forfeiture of derivative contraband exists in Pennsylvania.

Appellee waved a handgun in the air during a road rage incident.  Police officers responding to the scene detained Appellee and recovered a loaded, Smith & Wesson 9 millimeter semi-automatic pistol from the passenger seat of his car.

Appellee was charged with simple assault, disorderly conduct, and harassment.[1] Pursuant to a negotiated plea agreement, Appellee pled guilty to the summary offense of disorderly conduct on August 25, 2014. The trial court sentenced him to a $200 fine, plus costs. On December 10, 2014, Appellee filed a motion for return of property, governed by Pennsylvania Rule of Criminal Procedure 588, asserting a right to possession of the gun on the basis that there are no statutory or common law grounds for forfeiture of the weapon.[2] The Commonwealth responded with a motion for

---

[1] *See* 18 Pa.C.S. §§2701(a)(3), 5503(a)(4), 2709(a)(1).

[2] Rule 588 of Criminal Procedure provides as follows:

> (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

> (B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

> (C) A motion to suppress evidence under Rule 581 may be joined with a motion under this rule.

>> Comment: A motion for the return of property should not be confused with a motion for the suppression of evidence, governed by Rule 581. However, if the time and effect of a motion brought under the instant rule would be, in the view of the judge hearing the motion, substantially the same as a motion for suppression of evidence, the judge may dispose of the motion in accordance with Rule 581.

Pa.R.Crim.P. 588.

destruction of property, advancing that forfeiture and destruction were justified since the property was employed in the commission of the disorderly conduct offense.[3]  Following a hearing, the trial court denied the motion for return and granted the Commonwealth's motion for destruction.  A subsequent motion for reconsideration was denied, and Appellee appealed to the Commonwealth Court.[4]

In its Rule 1925 opinion, the trial court found forfeiture appropriate, citing decisions from the Commonwealth and Superior Courts that recognized common law forfeiture.  *See Commonwealth v. 2010 Buick Enclave*, 99 A.3d 163 (Pa. Cmwlth. 2014); *Commonwealth v. Salamone*, 897 A.2d 1209 (Pa. Super. 2006); *Commonwealth v. One 2001 Toyota Camry*, 894 A.2d 207 (Pa. Cmwlth. 2006) (*en banc*); *Commonwealth v. Cox*, 161 Pa. Cmwlth. 589, 637 A.2d 757 (1994); *Commonwealth v. Crosby*, 390 Pa. Super. 140, 568 A.2d 233 (1990).  The trial court also rejected the notion that felony and summary offense convictions are distinguishable in forfeiture, as well as Appellee's claim that the Controlled Substances Forfeiture Act, 42 Pa.C.S. §§6801-6802, was a comprehensive and pervasive statutory scheme that supplanted common law forfeiture.

In a unanimous, *en banc* opinion, the Commonwealth Court reversed, concluding that common law forfeiture, as originated and developed in England, was never incorporated in Pennsylvania.  The intermediate court noted that the Pennsylvania Constitution of 1790 denounced and effectively abolished common law forfeiture via the provisions prohibiting bills of attainder and forfeitures based on attainder.  *See*

---

[3] Parenthetically, Appellee's return motion was filed at the criminal docket for his underlying summary offense conviction, CP-01-CR-224-2014, whereas the Commonwealth lodged its destruction and forfeiture motion at a new miscellaneous docket number, CP-01-MD-25-2015.

[4] The Commonwealth Court generally maintains jurisdiction over appeals from civil forfeiture decisions.  *See* 42 Pa.C.S. §762; *see also In re One 1988 Toyota Corolla*, 675 A.2d 1290, 1296 (Pa. Cmwlth. 1996).

*Commonwealth v. Irland*, 153 A.3d 469, 471 (Pa. Cmwlth. 2017) (citing PA. CONST. of 1790 art. IX, §§18, 19). Thus, the court reasoned, absent a specific statutory prerogative, the Commonwealth has no authority to seek, and the courts have no power to order, forfeiture of derivative contraband.[5]

Regarding forfeiture's roots in England, the court noted that three kinds of forfeiture existed: deodand, forfeiture upon conviction for a felony or treason, and statutory forfeiture. Deodand, the court explained, was never adopted by American common law. *See id.* at 473 (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682, 94 S. Ct. 2080, 2091 (1974)). As for felony- or treason-based forfeitures, the Commonwealth Court related that convicted offenders, under English law, suffered "attainder" or "legal death," thus extinguishing their civil rights and resulting in the automatic forfeiture of all of their real and personal property. *Id.* at 474 (quoting *Austin v. United States*, 509 U.S. 602, 611-12, 113 S. Ct. 2801, 2806-07 (1993); BLACK'S LAW DICTIONARY 146 (9th ed. 2009)). The intermediate court explained that felonious forfeiture, or attainder, was rejected by the federal and state governments through constitutions or general statutes. *See id.* at 474-75 (quoting Scott A. Hauert, Comment, *An Examination of the Nature, Scope, and Extent of Statutory Civil Forfeiture*, 20 U. DAYTON L. REV. 159, 167-68 & nn. 64, 72–74 (1994)).

Pertaining to statutory forfeiture, the Commonwealth Court developed that, although pre-statehood legislation generally embraced English common law, early Pennsylvania enactments reflected a more remedial, rather than punitive, stance,

---

[5] The Commonwealth Court distinguished contraband *per se* from derivative contraband, explaining that the former is property the possession of which is unlawful, whereas the latter is property innocent by itself, but used in the perpetration of an unlawful act. *See Irland*, 153 A.3d at 473 (quoting *Commonwealth v. Howard*, 552 Pa. 27, 32, 713 A.2d 89, 92 (1998)).

mandating forfeiture only in limited instances. *See id.* at 476 (citing Act of Sept. 23, 1791, §9 (requiring forfeiture of a convicted robber's land and goods to the extent required to make restitution)). Additionally, the court posited that forfeiture was notably excepted from the general embrace of English common law during the nation's founding. *See id.* (quoting Richard E. Finneran & Steven K. Luther, *Criminal Forfeiture and the Sixth Amendment: The Role of the Jury at Common Law*, 35 CARDOZO L. REV. 1, 33–47 (2013)).

Relative to the present day, the court observed that Pennsylvania has forfeiture laws pertaining to drugs, fireworks, and alcohol, generally requiring that the property have a substantial nexus with the misconduct at issue. In this respect, according to the Commonwealth Court, it is a "commonly accepted and wide-spread view that '[s]tatutory civil forfeiture is the only type of forfeiture adopted in this country.'" *Id.* (quoting Hauert, *An Examination of the Nature, Scope, and Extent of Statutory Civil Forfeiture*, 20 U. DAYTON L. REV. at 167–68); *see also* Susanne H. Bales, Note, *Constitutional Law-Fifth Amendment Right to Due Process-Civil Forfeiture Defendants and Constitutional Protection*, 62 TENN. L. REV. 331, 336 (1995). The court concluded that the case law of other jurisdictions, both state and federal, reflects a similar perspective on forfeiture. *See Irland*, 153 A.3d at 476-77 (collecting cases).

Turning to Pennsylvania's case law, the Commonwealth Court initially suggested that the only potential basis for forfeiture of Appellee's weapon in this case would be pursuant to his conviction, since there was no authorizing statute. In this regard, the appellate court described the Commonwealth's case law experience as "somewhat unique and marked with conflict." *Id.* at 478. For example, the court explained, cases in the 1960s and 1970s held that no common law forfeiture existed and that forfeiture must be authorized by statute. *See id.* (citing *Commonwealth v. Schilbe*, 196 Pa. Super. 361,

175 A.2d 539 (1961); *Commonwealth v. Spisak*, 69 Pa. D. & C.2d 659 (C.P. Somerset 1974)). By the 1980s, in a marked shift, the court noted that panels of the Superior Court began recognizing forfeiture based on the common law. *See Petition of Maglisco*, 341 Pa. Super. 525, 491 A.2d 1381 (1985); *Estate of Peetros v. Cty. Detectives*, 341 Pa. Super. 558, 492 A.2d 6 (1985); *Commonwealth v. Coghe*, 294 Pa. Super. 207, 439 A.2d 823 (1982). Similarly, the court observed that a panel and an *en banc* complement of the Commonwealth Court had accepted a common law predicate for forfeiture in more recent years. *See One 2001 Toyota Camry*, 894 A.2d 207 (Pa. Cmwlth. 2006) (*en banc*); *Commonwealth v. One 1990 Dodge Ram Van*, 751 A.2d 1235 (Pa. Cmwlth. 2000).

However, the appellate court concluded that the Superior Court's 1980s decisions relied on authorities that were founded on *statutory* authority for forfeiture, thus undermining the claim of a common law predicate. *See, e.g., Crosby*, 390 Pa. Super. at 147-49, 568 A.2d at 237-38 (explicating the statutory support relied upon to establish a common law forfeiture power). Moreover, the Commonwealth Court noted that *In re Carpenter's Estate*, 170 Pa. 203, 32 A. 637 (1895), had rejected a forfeiture claim following a murder conviction on the basis that Article I, Sections 18 and 19 of the Pennsylvania Constitution prohibited attainder and the corresponding forfeiture. *See id.* at 208, 32 A. at 637 ("The legislature has never imposed any penalty of corruption of blood or forfeiture of estate for the crime of murder, and therefore no such penalty has any legal existence."); *see also id.* at 209, 32 A. at 638 ("Forfeitures of property for crime are unknown to our law . . .." (quoting *Owens v. Owens*, 6 S.E. 794, 795 (N.C. 1888))).[6] Ultimately, the Commonwealth Court reasoned that, "[f]ollowing the natural

---

[6] As the intermediate court observed, Article IX, Sections 18 and 19 of the Pennsylvania Constitution of 1790 are largely unchanged in their present iterations, reposited in (continued…)

direction of *Carpenter's Estate* and the unquestioned view espoused by various courts and commentators, . . . there is no such thing as common law forfeiture in Pennsylvania and that an individual's property can be forfeited only when the General Assembly enacts legislation that explicitly provides for forfeiture as a penalty for proscribed conduct." *Irland*, 153 A.3d at 485. The intermediate court further developed that, even if common law forfeiture had been adopted in the Commonwealth, it only applied to felonies and treason and, thus, would not be implicated by the summary offense conviction involved here. Accordingly, the appellate court reversed the trial court's order and remanded for the return of Appellee's property.

The Commonwealth petitioned for discretionary review, which this Court granted, of the following question:

> In this matter in which the Commonwealth Court held that the Commonwealth may not seek forfeiture absent specific statutory authority—a ruling that conflicts with both the Commonwealth Court's prior holdings and with those of the Superior Court—and where there is now a split in coequal appellate authority—should the Court grant the Commonwealth's petition in order to provide prompt and definitive guidance regarding the status of Common Law Forfeiture within the Commonwealth?

*Commonwealth v. Irland*, __ Pa. __, 169 A.3d 1052 (2017) (*per curiam*).

The Commonwealth contends that decades of precedent support post-conviction forfeiture in the absence of statutory authority, and it opines that the Commonwealth Court's rejection of this long-standing case law is surprising, since that court had also recognized the doctrine in *One 2001 Toyota Camry*, 894 A.2d 207, and *One 1990 Dodge Ram Van*, 751 A.2d 1235 (relying on Superior Court precedent). Moreover, the

---

(…continued)

Article I, Sections 18 and 19, except for the removal of one sentence that is not relevant to the present matter. *See Irland*, 153 A.3d at 471 n.1.

Commonwealth forwards, the cases have resulted in the development of relevant standards, including the types of contraband subject to forfeiture, the authorization needed, and the notion that a conviction is not necessary for forfeiture of contraband. *See, e.g.*, *Estate of Peetros*, 341 Pa. Super. at 563, 492 A.2d at 9 (holding that a conviction is not required for forfeiture);[7] *One 1990 Dodge Ram Van*, 751 A.2d at 1236 (requiring a nexus between the unlawful act and the derivative contraband); *see also One 2001 Toyota Camry*, 894 A.2d at 211 (explaining that the nexus requirement mitigated "the potentially harsh result of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person").

The Commonwealth further argues that the relevant analysis should focus on Pennsylvania's unique experience, including that Article IX, Section 19 of the Pennsylvania Constitution of 1790 explicitly provided for forfeitures "during the life of the offender." PA. CONST. of 1790 art. IX, §19. Along this same line, the Commonwealth observes that, although the Crimes Code abolished common law crimes, the preliminary provisions expressly reflect that it did "not affect the power of a court to declare forfeitures[.]" 18 Pa.C.S. §107(c).

The Commonwealth criticizes the Commonwealth Court's decision for failing to meaningfully address Rule 588, characterizing the rule as the court's procedural mechanism to effectuate common law forfeiture and/or as embodying the concept of derivative contraband, both of which, the Commonwealth opines, support the existence of common law forfeitures. The Commonwealth also notes that Rule 588 does not distinguish between *per se* contraband and derivative contraband.

---

[7] *But see 2010 Buick Enclave*, 99 A.3d at 169-70 (rejecting *Peetros*'s analysis and holding that the Commonwealth may not proceed to forfeit property without evidence of a conviction).

The Commonwealth further advances that, as the Commonwealth Court indicated, Pennsylvania's forfeiture experience is "somewhat unique and marked with conflict," *Irland*, 153 A.3d at 478, and thus, the historical basis for the state's embrace of common law forfeiture may not be found in the traditional categories traced to England. To the degree that a direct historical origin cannot be found, the Commonwealth proffers that there is a sufficient basis in the historical underpinnings reflected in Pennsylvania's case law to justify the doctrine's present existence.

As to policy, the Commonwealth observes that applying the intermediate court's reasoning to previously decided cases would have resulted in the return of a pistol used by a woman to shoot her spouse; "blood money" paid by a man to have his spouse murdered; and photographic equipment used to create child pornography. *See Maglisco*, 341 Pa. Super. 525, 491 A.2d 1381; *Peetros*, 341 Pa. Super. 558, 492 A.2d 6; *Coghe*, 294 Pa. Super. 207, 439 A.2d 823.

Lastly, notwithstanding the Commonwealth Court's conclusion, the Commonwealth contends that there is no mandate to return the pistol in this case, since Rule 588 continues to preclude doing so. To the degree that forfeiture is not available, the Commonwealth suggests that the property, following the requisite time period, would escheat to the state. *See* Act of April 9, 1929, No. 176 (as amended 72 P.S. §§1301.1-1301.29) (pertaining to the disposition of abandoned and unclaimed property).

The Pennsylvania Office of Attorney General ("OAG"), as *amicus curiae*, adds to the Commonwealth's view by purportedly tracing a common law basis for forfeiture back to *Commonwealth v. Sinn*, 82 Pa. Super. 482, 484 (1924). In terms of a comprehensive statutory scheme supplementing the common law, OAG posits that the Legislature's enactments pertaining to forfeiture have merely established procedures or broadened the potential property that may be viewed as derivative contraband. *See, e.g.*, 18

Pa.C.S. §2717(b.1) (assets relating to terrorism); *id.* §7707 (chop shop property); 42 Pa.C.S. §5802 (property pertaining to controlled substance offenses); 75 Pa.C.S. §9405(a) (fuels lacking required permits and any related conveyances). In this regard, OAG notes that, even with the adoption of a recent forfeiture statute, *see* Act of June 29, 2017, No. 13, P.L. 247, No. 13 (as codified 42 Pa.C.S. §§5801-5808), there was no expressed intent to make it the exclusive means of forfeiture or to displace other preexisting means.

*Amicus* Pennsylvania District Attorneys Association ("PDAA") focuses on common law forfeiture accompanying a felony or treason conviction. PDAA suggests that common law forfeiture has its Pennsylvania genesis in the charter granted to William Penn. *See* Finneran & Luther, *Criminal Forfeiture and the Sixth Amendment*, 35 CARDOZO L. REV. at 38. From there, PDAA traces Pennsylvania legal history with the primary overlay that early statutory and constitutional enactments either provided narrow exceptions to, or explicit preservation of, a broad common law forfeiture power. PDAA cites case law from this Court's beginnings that it suggests reflects this overriding notion of preservation and/or particularized exceptions. *See, e.g., Respublica v. Doan*, 1 Dall. 86 (Pa. 1784) (concerning a defendant's forfeiture of estate and property by attainder pursuant to a statute).

With respect to Article IX, Section 19 of the Pennsylvania Constitution, PDAA cites an early 19th century case, *Commonwealth v. Pennock*, 3 Serg. & Rawle 199, 1817 WL 1789 (Pa. 1817), in which a defendant objected to a sentence that commanded the "defendant's goods and chattels should be forfeited, and that his lands and tenements should be forfeited for life." In rejecting the defendant's challenge, the Court explained that, "although the judgment would have been better without it, yet the defendant suffered no injury by it; *as the law would have implied the forfeiture*, though

not part of the judgment."[8]   *Id.* (emphasis added).   PDAA argues that this decision

aligns with the general depiction of common law forfeiture.[9]

Appellee responds in line with the Commonwealth Court's reasoning, maintaining

that the Commonwealth lacks the power to compel forfeiture in the absence of statutory

authority.   Appellee argues that common law forfeiture was never adopted in America

and never became part of Pennsylvania common law.   Addressing the historical

---

[8] The *Pennock* opinion, consisting of only two paragraphs, did not cite the basis for its comment that "the law would have implied the forfeiture."  *Pennock*, 3 Serg. & Rawle at 199.   However, the Act of April 5, 1790, §11, 2 Sm. Laws 531, 2 Dallas's Laws 802, provided for forfeiture against persons convicted of burglary, which *Pennock* seems to be referencing.  *See Commonwealth v. Walinski*, 1909 WL 3107, at *1-2 (Pa. Quar. Sess. 1909) (explaining that the above referenced *Pennock* quote pertained to the Act of April 5).

[9] PDAA, in a footnote citing *Commonwealth v. Allen*, 630 Pa. 577, 107 A.3d 709 (2014), suggests that, because Appellee filed his motion 107 days after sentencing, the trial court no longer had jurisdiction to entertain the return motion.  *See id.* at 589, 107 A.3d at 717 ("[A] return motion is timely when it is filed by an accused in the trial court while that court retains jurisdiction, which is up to thirty days after disposition.").   Thus, according to PDAA, since the trial court lacked jurisdiction, so too did the Commonwealth Court.  The dissent adopts this perspective.

However, PDAA misreads this precedent.  *Allen*'s reasoning was predicated specifically on waiver, reflecting that the movant "had a prior opportunity to move for the return of property during the pendency of the criminal charges against him, [and] his failure to do so resulted in waiver of this issue."  *Id.* at 580, 107 A.3d at 711.  Moreover, the *Allen* Court pointedly limited its ruling to the facts of the case, which differ insofar as the Commonwealth here responded to the return motion with a forfeiture petition.  *See id.* at 591 n.10, 107 A.3d at 717 n.10 ("We emphasize that our holding today is limited to the factual circumstances presented, [and w]e have not attempted to define the timing pertaining to other circumstances[.]"); *see also id.* at 586 n.7, 107 A.3d at 715 n.7 (noting the Commonwealth's contention that "when [the Commonwealth] files a forfeiture petition in response to an untimely motion for return of property . . . it is waiving the defenses of untimeliness or waiver by claiming ownership of the subject property and asking the court to adjudicate the merits of its claim").  Accordingly, there is no present jurisdictional bar to resolution of this matter.

perspective, he contends that common law forfeiture never took hold in the colonial period due to a lack of enforcement by the English Crown and owing in part to the fact that any goods would have gone to the colonial governments, rather than the King. *See* James R. Maxeiner, *Bane of America Forfeiture Law Banished At Last*, 62 CORNELL L. REV. 768 (1977). Accordingly, Appellee argues that forfeiture at that time was a creature of statutory authority, as reflected in Pennsylvania's early forfeiture laws. *See* Act of September 23, 1791, §9; *see also Commonwealth v. One (1) 1984 Camaro Coupe*, 530 Pa. 523, 530, 610 A.2d 36, 40 (Pa. 1992) ("[C]ommon law courts [in the American Colonies] entertained suits for the forfeiture of property under English or local statutes authorizing its condemnation. [These] courts in the Colonies -- and later in the states during the period of Confederation -- were exercising jurisdiction *in rem* in the enforcement of forfeiture statutes." (alterations added) (quoting *C.J. Hendry Co. v. Moore*, 318 U.S. 133, 139, 63 S. Ct. 499, 502-03 (1943))).

Appellee also notes that, despite recent decisions otherwise, both the Superior and Commonwealth Courts agree that there is a dearth of case law prior to 1980 that recognizes common law forfeiture. *See 2010 Buick Enclave*, 99 A.3d at 167 ("[B]efore the court's precedent in the early 1980's, forfeiture in the Commonwealth was exclusively statutory."); *Crosby*, 390 Pa. Super. at 147, 568 A.2d at 237 ("Until the early 1980's, forfeiture cases in Pennsylvania involved *statutes* which authorized the forfeiture." (emphasis in original)). As for those early 1980s decisions adopting a common law approach, Appellee repeats the Commonwealth Court's observation that the authorities cited therein pertained to statutory authority for forfeiture. *See Crosby*, 390 Pa. Super at 148, 568 A.2d at 237 ("[T]he authorities cited in these opinions to support this proposition were cases in which there had been *statutory* authority for the forfeiture." (citing *Coghe*, 294 Pa. Super. 207, 439 A.2d 823; *Maglisco*, 341 Pa. Super.

525, 491 A.2d 1381; *Peetros*, 341 Pa. Super. 558, 492 A.2d 6)). Thus, in his view, the development of common law forfeiture in Pennsylvania lacks both historical and logical underpinnings.

In terms of policy, Appellee adopts the view of the *Crosby* majority that "it would be better to leave to the legislature exclusively the task of determining what derivative contraband is forfeitable, under what circumstances such property may be forfeited, and the procedures to be followed to accomplish forfeiture." *Crosby*, 390 Pa. Super. at 154-55, 568 A.2d at 240-41; *see also id.* at 152-53, 568 A.2d at 239-40 (observing that the prior Controlled Substances Forfeiture Act provided for forfeiture of certain property related to drug offenses, but also included a provision to protect innocent third parties, delineation of custodial control of property prior to forfeiture, a mandate for use of forfeited property or proceeds, and annual accounting of proceeds from forfeited property sales). In Appellee's view, a blanket forfeiture power would permit widespread government taking of any property deemed by the Commonwealth to be derivative, regardless of the nature or severity of the offense, thus undermining safeguards and reporting requirements already legislatively established. Appellee surmises that these concerns may disproportionately affect low-income defendants.

In the alternative, to the degree that common law forfeiture may be found to currently exist in Pennsylvania, Appellee argues that the Legislature has superseded it with the creation of a comprehensive forfeiture scheme. *See, e.g., Sternlicht v. Sternlicht*, 583 Pa. 149, 163, 876 A.2d 904, 912 (2005) (explaining that a law that is "general and comprehensive, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter" (quoting NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION §50:06 (6th

ed. 2000))). Appellee develops that existing specific forfeiture statutes underscore the General Assembly's desire to replace any purported English common law that would subject any and all derivative contraband to forfeiture. In this respect, he opines that the legislatively enacted forfeiture scheme would be wholly superfluous if, at common law, the derivative property could be forfeited, thus violating the well-established principle that the Legislature does not perform useless acts in adopting legislation. *See Commonwealth v. Elliot*, 616 Pa. 524, 533-34, 50 A.3d 1284, 1290 (2012) (citing, *inter alia*, 1 Pa.C.S. §1921(a)).[10]

As a preliminary matter, we distinguish the civil nature of derivative contraband forfeitures that arise pursuant to Rule 588 from criminal forfeitures. "Criminal forfeitures are *in personam* actions filed in conjunction with criminal charges and require that defendants first be convicted of an underlying criminal offense." Joseph Cramer, *Civilizing Criminal Sanctions - A Practical Analysis of Civil Asset Forfeiture Under the West Virginia Contraband Forfeiture Act*, 112 W. VA. L. REV. 991, 996 (2010) (footnotes omitted); *see* Hauert, *An Examination of the Nature, Scope, and Extent of Statutory Civil Forfeiture*, 20 U. DAYTON L. REV. at 159 n.2 ("Criminal forfeiture proceedings are wholly related to the criminal prosecution of the defendant, with the jury rendering a verdict of

---

[10] *Amicus* American Civil Liberties Union of Pennsylvania ("ACLU"), in support of Appellee, focuses primarily on purported abuses of civil forfeiture, particularly with respect to low-income persons and people of color, and the lack of procedural safeguards. ACLU contends that the Commonwealth's common law forfeiture theory is unlimited in scope and unworkable in practice, positing that any property may be subject to forfeiture based on a loosely-defined nexus.

The Institute for Justice has also filed an *amicus* brief in support of Appellee, generally echoing the arguments of ACLU and Appellee, while also highlighting problematic aspects of modern forfeiture practice, including an alleged conflict of interest stemming from forfeiture proceedings benefitting the law enforcement authorities who conduct the investigations.

forfeiture only after a guilty verdict on the underlying crime." (citing *United States v. Tit's Cocktail Lounge*, 873 F.2d 141, 143-44 (7th Cir. 1989))). Civil forfeiture, although conceptually related to criminal forfeiture, is a distinct *in rem* proceeding against property that may occur in the absence of any criminal charges or convictions. *See* Finneran & Luther, *Criminal Forfeiture and the Sixth Amendment*, 35 CARDOZO L. REV. at 24 n.156.

In this respect, it is notable that Rule 588 permits a motion for return of property to be decided at the same time as a motion for the suppression of evidence, *i.e.*, before trial. *See* Pa.R.Crim.P. 588(C). Thus, a forfeiture pursuant to Rule 588 may occur prior to conviction and in the absence of a criminal conviction. Accordingly, such forfeitures, although founded in a rule of criminal procedure, must be denominated civil in nature, since a criminal forfeiture is a criminal sanction resulting from the conviction.

As to the substantive issue presented in this case, on the whole, we agree with Appellee and the Commonwealth Court's conclusion that statutory authorization is required for the civil forfeiture of derivative contraband, although we have some modest differences with respect to certain aspects of the intermediate court's reasoning.

Beginning with the historical record, the Commonwealth Court accurately observed that our intermediate courts' recognition of common law forfeiture was largely based on references to statutory forfeiture.[11] Furthermore, the authorities presently

---

[11] Arguably, there is one sentence in *Commonwealth v. Landy*, 240 Pa. Super. 458, 362 A.2d 999 (1976), which is cited in *Coghe*, that may be viewed as indicative of a common law predicate for forfeiture. *See id.* at 465, 362 A.2d at 1002 ("It is not only the policy of the Controlled Substance, Drug, Device and Cosmetic Act, *but also the policy of our criminal law to deprive a criminal of the fruits of his illegal act.*" (emphasis added)). However, the substance of the *Landy* decision, and its holding, is anchored to statutory authorization for the forfeiture. *See id.* at 464, 362 A.2d at 1001-02.

(continued…)

forwarded by the Commonwealth and its *amici* do not demonstrate that common law or non-statutory civil forfeiture was embraced by the Commonwealth at the time of its establishment or in any period prior to the 1980s.

Moreover, the Commonwealth does not expressly endorse the notion that Pennsylvania has a historically tethered English common law basis for forfeiture, instead advancing a somewhat ambiguous *sui generis* conceptualization. *See, e.g.*, Brief for Commonwealth at 16-17 (contending that Pennsylvania's experience with common law forfeiture is unique and positing that it may not be "easily lumped in with traditional English categories"). Notably, the Commonwealth does not explain, in the absence of some connection to English common law, where this Court may otherwise divine the origins of the Commonwealth's common law forfeiture. Thus, from a

---

(…continued)

Moreover, we acknowledge that criminal forfeiture, as a common law precept, does appear in some authorities as having been employed in Pennsylvania around the time of the Commonwealth's founding. *See, e.g.*, Maxeiner, *Bane of American Forfeiture Law Banished at Last*, 62 CORNELL L. REV. at 776-77 ("[F]orfeiture consequent to attainder was . . . fairly widely used in Pennsylvania and Virginia."). However, as detailed above, the present controversy is limited to civil derivative contraband forfeiture. Further, non-statutory criminal forfeitures that existed at the dawn of the United States, *i.e.*, felony based attainder, did not permit for selective forfeitures based on a particular nexus with a criminal act; instead, it imposed the loss of all rights to real and personal property. *See* Cramer, *Civilizing Criminal Sanctions*, 112 W. VA. L. REV. at 993; Bales, *Constitutional Law-Fifth Amendment Right to Due Process-Civil Forfeiture Defendants and Constitutional Protection*, 62 TENN. L. REV. at 335 ("England also recognized a common law criminal forfeiture for felonies and treason; the convicted party forfeited all real and personal property to the Crown." (footnote omitted)). In any event, to the degree that common law criminal forfeiture continues to exist, it is not relevant to the present issue, since it only applies to treason and felonies.

historical perspective, the Commonwealth has failed to demonstrate that common law civil forfeiture of derivative contraband was adopted in Pennsylvania.[12]

This lack of historical record to support common law civil forfeiture is of particular importance. For one, it is informative with respect to whether early statutory forfeiture enactments of the Commonwealth are to be viewed as provisions limiting an otherwise broad, preexisting common law power, as *amicus* PDAA contends, or whether those early laws were express authorizations in the absence of common law power, as Appellee asserts. Given the dearth of historical support for a preexisting common law civil forfeiture power, our view aligns with the latter.

Additionally, this perspective has implications relative to Rule 588 and Section 107(c) of the Crimes Code, *see* 18 Pa.C.S. §107(c), which the Commonwealth contends reflect that common law authorization for forfeiture endures. As to the former, Rule 588 permits the filing of a return motion, as well as the forfeiture of property that is "contraband," thus providing the procedure for the disposition of seized property. Pa.R.Crim.P. 588(B). However, it cannot delineate the substantive rights that a person may possess with respect to the property. *See* PA. CONST. art. V, §10(c) ("The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant . . .."); *Payne v. Commonwealth Dep't of Corr.*, 582 Pa. 375, 385, 871 A.2d 795, 801 (2005) ("[T]his Court's rulemaking authority extends only to procedural law . . .. As a general rule, substantive law is that part of the law which creates, defines and regulates rights, while procedural laws are those that address the methods by which rights are

---

[12] Accordingly, there is no need to address Appellee's alternative contention that the Legislature has enacted a comprehensive statutory scheme that displaces the common law.

enforced." (citing *Commonwealth v. Morris*, 565 Pa. 1, 29, 771 A.2d 721, 737-38 (2001))). Stated otherwise, Rule 588 does not define, and cannot substantively prescribe, what property may be considered contraband. Thus, and in the absence of a developed common law precept for designating derivative contraband, Rule 588's forfeiture provision is limited to forfeitures authorized by sources of law extrinsic to the Rules.

Regarding Section 107(c)'s prescription that the Crimes Code does "not affect the power of a court to declare forfeitures[,]" 18 Pa.C.S. §107(c), to the degree that this provision may be viewed as a legislative preservation of forfeiture authority, such a perspective would require that common law civil forfeiture preexist, which, again, is not supported by the historical record.[13] Additionally, it is not clear that the forfeiture referenced in the first clause of subpart (c) is necessarily ascribed to civil forfeiture, as there are other forms of forfeiture. *See, e.g.*, PA. CONST. art. V, §18(d)(3) (mandating that, upon the conviction of a justice, judge or justice of the peace for misbehavior in office, the person shall "forfeit" the judicial office). Accordingly, we remain unconvinced that Section 107(c) substantively demonstrates that common law civil forfeiture exists.

As relates to the Commonwealth Court's conclusion that the Pennsylvania Constitution of 1790 effectively abolished common law forfeiture, *see* PA. CONST. of 1790 art. IX, §§18, 19, these provisions are not particularly elucidating, as they apply to forfeiture consequent to attainder, which, as already discussed, is similar, but historically distinct, from the concept of civil forfeiture. *See also supra* note 11. Attainder in England was "the act of extinguishing a person's civil rights when sentenced to death or declared an outlaw for committing a felony or treason," KEN

---

[13] *But see supra* note 11 (acknowledging the potential existence of common law criminal forfeiture for felonies and treason).

GORMLEY ET AL., THE PENNSYLVANIA CONSTITUTION: A TREATISE ON RIGHTS AND LIBERTIES §21.2 (quoting BLACK'S LAW DICTIONARY 123 (7th ed. 1999)), and it resulted in the forfeiture of real and personal property that "followed automatically" from the conviction "by operation of law." Finneran & Luther, *Criminal Forfeiture and the Sixth Amendment*, 35 CARDOZO L. REV. at 25-26 (footnotes omitted).

Thus, forfeiture pursuant to attainder is a criminal sanction derived directly from the felony or treason conviction that stands in contrast to civil forfeiture, which is a distinct *in rem* proceeding. *See id.*; *see also* Matthew R. Ford, Comment, *Criminal Forfeiture and the Sixth Amendment's Right to Jury Trial Post-Booker*, 101 NW. U. L. REV. 1371, 1403 (2007) ("With the death of attainder, American legislatures effectively laid criminal forfeiture to rest for the next two centuries. *In rem* forfeiture, on the other hand, came to predominate American forfeiture law. Use of statutorily imposed forfeiture predicated on the *in rem* fiction developed expansively." (footnotes omitted)); *accord In re Carpenter's Estate*, 170 Pa. at 208, 32 A. at 637 ("The legislature has never imposed any *penalty* of corruption of blood or forfeiture of estate for the crime of murder, and therefore no such *penalty* has any legal existence." (emphasis added)).[14] Accordingly, the Pennsylvania Constitution (as presently amended or in its 1790 form) is not indicative of the status of common law civil forfeiture or the corollary need for statutory authorization.

---

[14] Along this same line, there appears to be some dispute as to the origin of civil forfeiture statutes, with Oliver Wendell Holmes tracing its lineage to deodand, *see* O.W. HOLMES JR., THE COMMON LAW 7, 34-35 (Boston, Little, Brown, & Co. 1881), while more recent writings indicate origins in the early admiralty courts under the Navigation Acts. *See* Michael Schecter, Note, *Fear and Loathing and the Forfeiture Laws*, 75 CORNELL L. REV. 1151, 1153 (1990); Jacob J. Finkelsten, *The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty*, 46 TEMP. L.Q. 169, 231, 32 (1973). This divergence of views, however, is not presently pertinent.

Pertaining to the Commonwealth's position that, even in the absence of a historical predicate for common law civil forfeiture, this Court should preserve the doctrine as it has developed since the early 1980s, we conclude that doing so is not advisable. Apart from what may be viewed as an unconstitutional creation or alteration of substantive rights, *see* PA. CONST. art. V, §10(c), there are significant policy questions that are best addressed by the Legislature in the first instance. *See, e.g.*, *Crosby*, 390 Pa. Super. at 154-55, 568 A.2d at 240-41 ("[I]t would be better to leave to the legislature exclusively the task of determining what derivative contraband is forfeitable, under what circumstances such property may be forfeited, and the procedures to be followed to accomplish forfeiture."); *accord Commonwealth v. 1997 Chevrolet & Contents Seized from Young*, 639 Pa. 239, 279, 160 A.3d 153, 177-78 (2017) ("Forfeitures are not favored; they should be enforced only when within both [the] letter and spirit of the law." (quoting *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226, 59 S. Ct. 861, 865 (1939))).

We also disagree with the Commonwealth's claim that, regardless of the Court's decision with respect to common law civil forfeiture, the property should still not be returned, but rather, held by the Commonwealth until an escheatment period has lapsed. *See* Act of April 9, 1919, P.L. 343, No. 176 (as amended 72 P.S. §§1301.1-1301.29 (pertaining to the disposition of abandoned and unclaimed property). Such custodial statutes are not generally employed to retain property in instances where the owner is known; instead, they are designed for transfers of abandoned or unclaimed property, but also with the aim to reunite owners with their property. *See* ROMUALDO P. ECLAVEA, 7 SUMM. PA. JUR. 2D, *Property* §12.14 (2018).

Thus, on the basis of the above, we conclude that there is no historical foundation establishing common law civil forfeiture in the Commonwealth and that civil

forfeiture of derivative contraband requires statutory authorization.    Accordingly, the order of the Commonwealth Court is affirmed.

Justices Baer, Todd, Donohue and Wecht join the opinion.

Justice Dougherty files a concurring opinion.

Justice Mundy files a dissenting opinion.