**[J-61A-2025 and J-61B-2025] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN RE: ALISHA SHEPARD SMITH | : | No. 70 EAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: ALISHA SHEPARD SMITH | : | Superior Court at No. 2128 EDA |
| | : | 2022 entered on December 13, |
| | : | 2023, affirming the Order of the |
| | : | Philadelphia County Court of |
| | : | Common Pleas at No. CP-51-MD- |
| | : | 0001772-2022 entered on July 19, |
| | : | 2022. |
| | : | |
| | : | ARGUED:  September 9, 2025 |
| | | |
| IN RE: ALISHA SHEPARD SMITH | : | No. 71 EAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: ALISHA SHEPARD SMITH | : | Superior Court at No. 2129 EDA |
| | : | 2022 entered on December 13, |
| | : | 2023, affirming the Order of the |
| | : | Philadelphia County Court of |
| | : | Common Pleas at No. CP-51-MD- |
| | : | 0001773-2022 entered on July 19, |
| | : | 2022. |
| | : | |
| | : | ARGUED:  September 9, 2025 |

## CONCURRING OPINION

**JUSTICE WECHT**

I disagree with the Majority's conclusion that "what occurred below is best characterized as a *de facto* forfeiture."[1]  Nevertheless, I agree with the Majority that Alisha Shepard Smith is entitled to the return of her firearm and magazine.  Thus, I concur in the result.

---

[1]    Majority Opinion at 13.

Rule 588 of the Rules of Criminal Procedure permits owners of property seized by law enforcement officers to file a motion seeking the return of their property. The Rule states that:

> (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.
>
> (B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.[2]

Per Rule 588, the party moving for the return of property has the initial burden (under subsection A) to establish that he or she is entitled to lawful possession of the subject property. Once that showing is made, the burden shifts to the Commonwealth (under subsection B) to prove that the "property is contraband, in which case the court may order the property to be forfeited."[3] As the Majority explains, the "may" in that sentence is critical. Rule 588 states that the court *may* order forfeiture. But the court also may deny the return-of-property motion without ordering forfeiture.[4]

---

[2] Pa.R.Crim.P 588.

[3] *Id.* "Contraband" in this context refers to both *per se* and derivative contraband. Things that are illegal to possess, like heroin, are *per se* contraband. Derivative contraband is property that, while legal to own, has been used to commit a crime or was derived from the proceeds of a crime. To prove that property is derivative contraband, the Commonwealth must establish a specific nexus between the property and the alleged criminal activity. *Beaston v. Ebersole*, 986 A.2d 876, 882 (Pa. Super. 2009) (*en banc*).

[4] Majority Opinion at 11 ("Rule [588] envisions three scenarios once lawful possession has been proven: (1) the restoration of the property to the lawful owner; (2) forfeiture, if the property is contraband; or (3) the denial of the motion for return of property, without forfeiture, if the property is contraband.").

Prior to *Commonwealth v. Irland*,[5] the distinction between a trial court ordering forfeiture and a trial court simply denying a return-of-property motion was, for the most part, inconsequential. The Commonwealth's burden was the same regardless of whether or not it was seeking forfeiture. Put differently, the Commonwealth could win a forfeiture motion pre-*Irland* merely by showing that the property was derivative contraband. It could also defeat a return-of-property motion with the same showing. Then, *Irland* held that Rule 588 does not itself authorize civil forfeitures of derivative contraband, because the Rule's "forfeiture provision is limited to forfeitures authorized by sources of law extrinsic to the Rules."[6]

*Irland* holds that there can be no civil *forfeiture* of derivative contraband without statutory authorization. But Rule 588 continues to permit trial courts to deny return-of-property motions whenever the seized property in question is derivative contraband.[7] This is a problem. Our case law instructs that the Commonwealth cannot civilly forfeit Smith's property, but Rule 588 states that the Commonwealth does not have to give it back to her either. The text of Rule 588 is incompatible with *Irland*. *Irland* held that the Commonwealth cannot secure civil forfeiture of derivative contraband absent statutory authorization. Yet Rule 588 continues to allow the Commonwealth to defeat every return-of-property motion so long as it shows that the property is derivative contraband. I agree with Smith that this is a loophole built into Rule 588, and that the loophole essentially "neuters *Irland*."[8]

---

[5]  193 A.3d 370 (Pa. 2018).

[6]  *Id.* at 380-81.

[7]  Pa.R.Crim.P 588(B) ("If the motion is granted, the property shall be restored unless the court determines that such property is contraband[.]").

[8]  Brief for Smith at 17 ("[T]he current holding of the Superior Court puts in place a system whereby if no forfeiture petition is filed, the Commonwealth can maintain control (continued…)

Rule 588 must be rewritten to account for *Irland*. Our Rules Committee should study how other states handle the return of seized property in cases where criminal charges either are not filed or are initially filed but then later dismissed without prejudice. Specifically, there must be some temporal limitation on the Commonwealth's ability to retain seized property when it fails to bring (or refile) criminal charges within a set time period. The Commonwealth urges us to hold that law enforcement agencies are "permitted to seize and retain evidence of a crime at least until the case has been resolved or the statute of limitations for the possible charges have expired."[9] The Majority correctly rejects the Commonwealth's proposal, noting that it would require property owners in Smith's position to file at least two return-of-property motions, an approach that the Majority rightly calls "fundamentally unfair."[10] Furthermore, as Smith points out in her reply brief, there is no statute of limitations for certain offenses, such as homicide. So, if the Commonwealth can defeat a return-of-property motion merely by showing that the seized property is evidence that could be needed for a future prosecution, then the Commonwealth theoretically may retain seized derivative contraband in murder

---

of property that they could not if they had filed a civil forfeiture petition. This creates a loophole that neuters *Irland*[.]"); *id.* ("[T]he Commonwealth is partaking in what is essentially a *de facto* forfeiture, seizing this citizen's property permanently without any statutory right to do so.").

[9] Brief for the Commonwealth at 6-7.

[10] Majority Opinion at 12-13 ("[U]nder the Commonwealth's theory, a person aggrieved by a seizure whose charges are dismissed must always file at least two motions for return of property—one to avoid waiver under *Allen*, and one at some later point after the charges are refiled or the speedy trial clock runs—in order to have any hope of regaining possession of their property."). *See Commonwealth v. Allen*, 107 A.3d 709, 718 (Pa. 2014) (holding that the "failure to file a return motion during the pendency of the criminal charges . . . or within thirty days following dismissal of the charges results in waiver").

investigations indefinitely without ever bringing criminal charges or initiating civil forfeiture proceedings.

The Majority wisely rejects the Commonwealth's view that it can retain derivative contraband until all statutes of limitations for all potentially implicated offenses have expired. But I am not convinced that the rule the Majority embraces is all that different from the rule it rejects. The Majority holds that, to defeat a return-of-property motion, the Commonwealth not only must prove that the seized property is derivative contraband, but it also must aver "that the property has continuing evidentiary value."[11] This seems to me a rather low bar. If the derivative contraband in question is evidence of a crime for which the statute of limitations has not expired, then the Commonwealth likely will be able to "allege an ongoing evidentiary need for the property."[12] Indeed, the Commonwealth here presumably could have alleged in the trial court that Smith's firearm and magazine had "continuing evidentiary value," given that they were evidence of crimes for which charges still could have been brought.

The Majority's approach also leads to the same "fundamentally unfair" situation that the Commonwealth's proposal would cause. After criminal charges are dismissed without prejudice, property owners will have to file protective return-of-property motions under *Allen.* Those motions will be denied so long as the Commonwealth alleges that the

---

[11]    *See* Majority Opinion at 14; *see also id.* at 13 (suggesting that, even in the absence of an averment by the Commonwealth, no "*de facto forfeiture*" occurs when "an ongoing evidentiary need for the property . . . is apparent").

[12]    *Id.* at 13. I concede that circumstances may arise where, although the statute of limitations for an offense has not expired, the Commonwealth knows with certainty that it is unable to prosecute a particular case for one reason or another. If a key prosecution witness has died, for example, then the Commonwealth may be unable to allege in good faith that there is a possible "ongoing evidentiary need for the property." But, outside of such situations, there is little daylight between the Majority's interpretation and the Commonwealth's preferred approach.

derivative contraband "may still be needed for a future prosecution."[13]  Property owners will then (somehow) need to determine when a prosecution involving their property is no longer possible, and then file follow-up motions once any "continuing evidentiary value" in their property has dissipated.[14]  In other words, the Majority's embellishment upon Rule 588 does not meaningfully prevent the Commonwealth from engaging in "*de facto* forfeitures," nor does it clarify precisely what individuals in Smith's shoes would need to do to regain eventual possession of their property.

Although I disagree with the Majority's interpretation of Rule 588, and although I believe that robust revisions to the Rule are necessary, I nevertheless agree that the trial court erred in denying Smith's return-of-property motion.  Even if one assumes (as Rule 588 states) that the Commonwealth only had to prove that Smith's items were derivative contraband, the Commonwealth still failed to carry that light burden.  The trial court denied Smith's motion because it found that she used the seized firearm "in an unlawful manner by pointing it [at] her neighbors to threaten or assault them."[15]  But the court based that conclusion on a police report, an arrest report, and a witness statement, none of which were entered into evidence at the return-of-property hearing.  The trial court's decision therefore lacks sufficient record support and must be reversed.[16]

---

[13]     *Id.* at 12.

[14]     *Id.* at 14.

[15]     Trial Court Opinion at 6.

[16]     After failing to build an adequate record below, the Commonwealth now argues that Smith's own testimony at the return-of-property hearing established that the firearm and magazine are derivative contraband.  According to the Commonwealth, Smith's "own admissions on the record that she pointed her handgun at her unarmed neighbors" satisfied the Commonwealth's Rule 588 burden.  Brief for Commonwealth at 16.  The Commonwealth does not identify where in the record this supposed admission appears, and the trial court, in any event, did not find Smith's testimony to be credible.  Trial Court Opinion at 5 ("[T]his Court made a credibility determination and did not believe the (continued…)

testimony of [Smith].”); *id.* at 6 (“This Court did not believe the testimony of [Smith.]”); *id.* (“This Court, after reviewing the credible evidence presented by the Commonwealth, including the police report and statements of the parties, and hearing the incredible testimony of [Smith], found that [Smith] used the firearm in an unlawful manner by pointing it [at] her neighbors to threaten or assault them.”).  The Commonwealth’s attempt to meet its burden using Smith’s testimony is therefore unavailing.